STATE OF NEBRASKA, EX REL. WOODRUFF-DUNLAP PRINT-
ING COMPANY, v. JOHN F. CORNELL ET AL.

FILED JUNE 15, 1897.   No. 9216.

1. **State Printing: CONTRACTS.** That part of section 2, chapter 68, Com-
piled Statutes, in which is stated, "The printing and binding of
reports of state officers, authorized by law to be printed, and all
other reports and documents ordered by the legislature, except
such as enter into and form a part of the journals, shall be let in
another contract," *held* to require that the designated work be
done under a single contract; and the state printing board cannot
sever the contract for such work and award portions of it to one
bidder and other portions to other bidders.

2. ———: ———: BIDDERS. There is a necessary implication in the
law in regard to state printing that the contracts be awarded to
the lowest competent bidders.

3. ———: ———: ———. Where the statute provides that there be an
advertisement for proposals or competitive bids for the doing of
public work and the awarding of the contracts pursuant to such
bids, the object being to secure the work to be performed as eco-
nomically as may be, and the statute contains a statement that if
the first party to whom the contract is awarded fails to perfect the
contract, the work may be let to the next lowest bidder, it re-
quires, though not expressed directly, that the contract be awarded
and let to the lowest bidder, unless the statute vests, or by reason
of the nature of the work there rests, a discretion in the officer or
board authorized to let the contract.

4. ———: ———: REJECTION OF BIDS. A provision in the statute or a
reservation in the advertisement of the right of the officer or board
in the consideration of bids, to reject any or all of them, does not
confer a power to be exercised arbitrarily or without cause in the
rejection of a bid or bids.

5. ———: ———: ———. Where the law requires that specifically des-
ignated items of work shall be let as a whole or in a single con-
tract, the fact that an officer or board, charged with the duty of
awarding such contract to the lowest bidder therefor, attempts to
sever the contract and to let portions of it to several parties re-
spectively, does not work a rejection of any or all the bids, as such
action is wholly unauthorized.

6. **Res Judicata: PLEADING.** If to a petition or pleading in an action a
general demurrer is interposed, and the pleading is determined
defective for the want of a material allegation, and a judgment
follows, and in a second suit the material averment which the
pleading in the first suit lacked, is supplied, constituting the plead-

ing sufficient as a statement of a cause of action, the judgment in the first case is not a bar to the second suit, though both were instituted to obtain the enforcement of the same right.

ERROR from the district court of Lancaster county. Tried below before HOLMES, J. *Reversed.*

*J. H. Broady,* for plaintiff in error.

*C. J. Smyth,* Attorney General, and *Ed P. Smith,* Deputy Attorney General, contra.

HARRISON, J.

The relator herein filed in the district court of Lancaster county an application for a writ of *mandamus* to issue against John F. Cornell, the auditor of public accounts, John B. Meserve, state treasurer, and William F. Porter, secretary of state, who by law constitute the state printing board, to compel such board to award and cause to be let to the relator a contract to do certain of the public printing. An alternative writ was issued, in which appeared certain formal statements, to which we need devote no space or attention; also, that prior to December, 1896, and up to January 7, 1897, Eugene Moore was auditor of public accounts, Joseph S. Bartley was state treasurer, and Joel A. Piper secretary of state, and collectively the state printing board, and as such board advertised for proposals or bids for doing public printing, separating the work to be done, arranging one portion of it under what was designated in the advertisement "Class One," and the other as "Class Three;" that in the advertisement the board assumed to reserve the right to award contracts for the work to be done under Class Three in or on as many separate contracts as it should deem best; that the relator made its proposal or bid for the performance of the work included under Class Three, and accompanied its bid with good and sufficient bond conditioned as required by law, and in the sum of $5,000; that the bids offered were duly considered by the printing board, and

it was determined that the relator's bid was the lowest and best bid for the work included in Class Three and the relator a responsible bidder. The printing for the doing of which proposals had been asked, arranged and classed as three, was of reports of state officers, and it was further pleaded that for the printing of six of said reports the bid of relator was the lowest; that for six of them the bid of Jacob North & Co. was the lowest, and for printing of four of them the bid of the State Journal Company was the lowest, but in the aggregate, or for printing the whole number, the proposal of relator was the lowest; and further:

"The said printing board, at the time provided by law, in the manner provided by law, considered the relator's bid as aforesaid. At the time they so considered it the relator tendered to the said board its bond to the state in the sum of not less than twice the amount of the contract price of the contract for the work so bid for, which he claims should be awarded to him, and with more than two good and sufficient sureties approved by said board, conditioned for the faithful performance of said contract, which bond was according to law in all respects and was received and kept and is still retained by said board, and no objection has ever been made to the form or the sufficiency of the sureties of the said bond. The relator thereupon demanded of the said board the awarding of a contract and the execution thereof in writing in due form for the printing of all the said sixteen reports, but the said board refused, solely on the ground that they contended that the relator was only entitled to such contract for the said six reports on which its bid was the lowest, and that Jacob North & Co. were entitled to another contract for the printing of the said six reports on which its bid was the lowest, and that the State Journal Company was entitled to the contract for the printing of the said four reports on which its bid was the lowest. The said board neither made nor have any other objection to the relator's demand than as aforesaid. They only objected

to the demand because they desired that there should be three contracts for the work covered by said bid, viz., one to relator, one to Jacob North & Co., and one to the State Journal Company. The said board still insists upon said objections, and still refuses to award the contract for the whole of said work to the relator, until the said Moore, Piper, and Bartley were succeeded in office as the said printing board on the 7th day of January, 1897, when the said Cornell succeeded the said Moore as auditor of public accounts, and the defendant Meserve succeeded the said Bartley as treasurer, and the defendant Porter succeeded the said Piper as secretary of state, and thereby the defendants became and constituted the state printing board of Nebraska, as the successors to the said Moore, Bartley, and Piper, and that they have remained such state printing board ever since, and are such now. Immediately after the defendants became the state printing board the relator saw a majority of them, of whom he demanded the awarding of a contract according to its bid above given, and the execution of a written contract accordingly. The majority of the members of the new board conceded its right to a contract according to law, according to its request, and for a time satisfied him that the contract would be awarded to him and executed accordingly. Thereupon the relator delivered to the defendant Porter, as the custodian of the records of the said board, its bond, duly executed according to law, with good surety, for the faithful performance of the said contract according to its bid, hereinbefore more particularly mentioned, and the board accepted it without objection and has retained it ever since. Thereupon the relator concluded that the contract would be awarded to him and proceeded to get ready to do the work, and, pursuant to talks with members of the board, did actually commence upon the work thereof, and on good faith that the contract would in the regular order of business be executed. The relator was informed by the printing board that they would get the attorney general to draw the contract in writing, and

notify the relator when it was ready for execution. In which assurance the relator acted until about the last of January, 1897, when the defendants, as the state printing board, met and decided that they had no jurisdiction to act in the matter, because of what the board had done during the incumbency of their predecessors, and solely upon that ground, that they had no jurisdiction to act, conceding the responsibility of the relator and that he was a good and lawful bidder, declined to take any action in the matter, thereby leaving the relator without any remedy except in the courts, and therefore refused to enter into contract with relator for said work, as relator then and there demanded according to its bid; but, on the other hand, the said printing board considered that they are bound by the action of the former board to divide up the said work into three contracts, according to the plan of the former action of the board, which they propose to do and will do if not controlled by the action of the courts. With no former knowledge on that subject, it was then ascertained that the said board of printing, before the defendants were installed in office, had entered upon the minutes of their record that they awarded three different contracts for the said work, part to relator, part to Jacob North & Co., and part to the State Journal Company, according to their theory and contention as hereinbefore stated. But the said printing board has all the time since then, and up to the present time, declined and refused to make written contracts, and the said board has entered into no writings with any one, although the said bids all contemplated writings, and such written contracts are necessary to consummate the awarding thereof. There is no consummated contract yet with any one for any part of the work covered by the bids hereinbefore described."

To the writ the board filed an answer, in which it admitted the formal allegations of the writ and the allegations in regard to the advertisement for bids, the bidding, and that relator's bid was accompanied by its bond in the

sum of $5,000; also that the bids of the State Journal Company, Jacob North & Co., and the relator were as stated in the writ, and were all determined by the printing board to be unobjectionable in form and substance, and that an award was made to each of a portion of the printing included in Class Three, as more fully shown by a copy of the record of proceedings in this regard of the printing board, of date December 8, 1896, which copy was as an exhibit attached to and made a part of the answer. It was also admitted that the respondents had declined as a board to take any action in the matter, and refused to order a contract to be entered into with relator for the printing of all of said reports. There was a denial that the bid of relator was determined by the board to be the lowest and best for the work included in Class Three; also a denial of the conversations and transactions alleged to have occurred between the printing board and the relator prior to January 7, 1897. It was affirmatively alleged in the answer that the board was ready and willing to enter into a contract with relator for the printing of the six reports for which its bid was and had been declared the lowest and best. The further allegations in the answer were as follows:

"Further answering said relator's petition, these respondents show to the court that on the —— day of December, 1896, an action was commenced in the supreme court of the state of Nebraska entitled 'The State of Nebraska, ex rel. The Woodruff-Dunlap Printing Co., v. Joseph S. Bartley, State Treasurer, Eugene Moore, Auditor of Public Accounts, and Joel A. Piper, Secretary of State, Constituting a State Printing Board,' in which action relator sought to procure a writ of *mandamus* from said court to compel the said respondents therein to enter into a contract with the said relator therein the same as is now prayed for by said relator in the petition now filed in this court. They allege that said action was pending and undetermined when the respondents therein named went out of office on the 7th day of January, 1897; that

thereafter the relator filed an amended and supplemental petition, and by leave of court joined and made the respondents herein parties to said action, and in the said amended and supplemental petition the said relator set up the matters and things in substance the same as are pleaded in its petition filed in this court, and asked that these respondents be required to enter into a contract with the relator the same as is prayed by the relator in this court; the said amended and supplemental petition being filed by the said relator in the supreme court of Nebraska on the 2d day of February, 1897. They allege that afterwards, to-wit, on the 8th day of February, 1897, these respondents filed in the supreme court of the state of Nebraska their demurrer to the petition of the relator; that afterwards said cause came on to be heard upon the issues joined in said pleadings and was submitted to the supreme court of the state of Nebraska; that afterwards, on the 4th day of March, 1897, the said supreme court of the state of Nebraska, after being fully advised in the premises, found the issues so joined in said cause in favor of these respondents, and entered a judgment in said court dismissing said proceedings, and ordered that these respondents go hence without day and recover of the relator their costs therein expended. The respondents attach hereto, and mark 'Exhibit B,' a true and certified copy of the amended and supplemental petition filed by the relator in said court, except that the same does not contain 'Exhibit A,' referred to in the petition, but which exhibit is in truth and in fact the same as 'Exhibit A' attached to the relator's petition filed in this court; a true and certified copy of the demurrer filed in the supreme court by these respondents, and the final order of the court entered in said cause on the 4th day of March, 1897.

"10. These respondents allege that the said supreme court of the state of Nebraska had full jurisdiction of the subject-matter of the said action and of the person of the relator and of these respondents, and that the judgment so entered in said court on said 4th day of March, 1897,

has never been reversed, vacated, or modified, but is now in full force and affect.

"Wherefore these respondents say that by reason of the premises herein set forth, the relator's rights in the premises have been fully adjudicated and determined by the supreme court of the state of Nebraska, and this court is wholly without jurisdiction to hear and determine the matters complained of in the relator's petition filed herein."

Of the issues presented there was a trial resulting in a denial of the application for the writ and a judgment of dismissal of the action. The relator has removed the case to this court by proceedings in error.

There are but two main questions raised and discussed by counsel, one that the determination of the awarding of the contract was committed to the board and a matter resting within its discretion, hence not controllable by *mandamus;* and a second, that of a former adjudication in an original action in this court. The provisions of statute in relation to the state printing board and its duties, etc., will be found in chapter 68, Compiled Statutes, and chapter 61, Session Laws, 1883, of which section 1 states what officers shall constitute the state printing board, and that it "shall have general supervision over the matter of state printing, in the manner provided by this act." Section 2 is as follows: "The printing of all bills for the legislature, with such matters as may be ordered by either house thereof, to be printed in bill form, shall be let in one contract. The printing and binding of the senate and house journals shall be let in another contract. The printing and binding of reports of state officers authorized by law to be printed, and all other reports and documents ordered by the legislature, except such as enter into and form a part of the journals, shall be let in another contract. The printing and binding of the laws, joint resolutions, and memorials enacted by the legislature shall be let in another contract. And the printing and binding of all blanks, blank books, and cir-

culars required to be furnished by the officers of the executive department of the state shall be let in another contract." In section 3 the times at which the contracts for public printing shall be let are prescribed. Section 4 provides for advertisements for proposals and, *inter alia*, that the advertisement "shall also state that the board reserves the right to reject any and all bids." Section 7 is in the following language: "The proposal or bid for any of the contracts aforesaid shall not be considered unless the same shall be accompanied by a bond in the sum of five thousand dollars ($5,000), with two or more sureties, that in case the party proposing for any such contract shall be awarded the same such party will, within five days after the award to him of such contract, enter into bonds for the faithful performance thereof;" and section 8: "It shall be the duty of the secretary of state to give immediate notice to the successful bidder that his proposal has been accepted, and each successful bidder shall in five days thereafter enter into bonds to the state in the sum of not less than twice the amount of the contract price for each and every contract so awarded to him, with at least two good and sufficient sureties, to be approved by said board, conditioned for the faithful performance, pursuant to this act, of that contract for which he has been adjudged the successful bidder; and if he fail to give bond within the time allowed, then the contract shall be given to the next lowest bidder who will give bond as aforesaid, or the board may in their discretion advertise anew and relet the contract in the manner hereinbefore provided." In section 10 it is prescribed that the attorney general shall draw all contracts; that any contract shall be signed by the members of the board, and the party to whom it has been awarded. It also provides for the institution of action on the bond filed with the bid if any successful bidder shall fail to file bond for performance of his contract.

There is little or no substantial conflict in regard to the facts. It appears that for the printing of items in Class

Three the bid of relator, if the bids were considered as a whole or in the aggregate, was the lowest of all proposals for such work, there being quite a number, while on some individual items it was not the best. There is and was no contention in respect to the responsibility of the relator nor as to the sufficiency of the preliminary bond furnished in form or substance. The board, it is disclosed by a record which was kept of the proceedings when in session for the purpose of letting the contract, severed the items which appeared in the advertisement as Class Three and, if it could legally do so, awarded contracts for the work in distinct stated portions, one to each of three different bidders. If the board possessed the power or right to so do, then this application could not and cannot control it. It will be remembered that in section 1 the board was given general supervision of the state printing, but "in the manner provided by this act." The language employed in section 2 is clear and unambiguous and can scarcely be said to admit of a construction other than is explicitly imported by the words employed. Its first provision is "The printing of all bills for the legislature, with such matters as may be ordered by either house thereof, to be printed in bill form, shall be let in one contract." To say that this means the contract may be severed and not one, but two or more contracts may be awarded, for illustration, to one party or firm for the printing of senate files and to another for the printing for the house of representatives, would be a substitution for the words used, of language of an import in direct opposition to the plain meaning of that actually used by the lawmaker. Each following clause in reference to the letting of a contract, for in each a specifically stated distinct class of printing, inclusive of the third, prescribes as to each that it shall be let in "another contract." The signification of another is "one more," and thus in each instance it is made as plain as language can state it that each class is to be let in a single contract. There can be no other conclusion without ignoring the direct terms of the sec-

tion; hence we must conclude that the board could not sever the contract for the printing of the reports of state officers, or that included in Class Three. Whether it was wise to so enact or whether better results would have been obtained had the provision been different is not for us to say. It was a question for the consideration of the legislators, and what they embodied in the law as the result of such consideration may not be set aside directly or by construction where none is needed.

Another question which presents itself is, does the law require the board to award the contract to the lowest bidder? It does not in express terms. If it does not by implication, it does not at all. The section 8 furnishes us some strong indications on this subject. It states that if the bidder to whom the contract is awarded fails to furnish the prescribed bond and perfect his contract, it shall be let to the next lowest bidder. It does not seem sensible, in view of this further provision to which we have just alluded, that it was in the contemplation of the legislature that the contract should or would in the first instance be awarded to other than the lowest bidder. The law provides that there shall be an advertisement and a competitive bidding. The main object and purpose of the last can be none other than to secure to the state the printing to be done as economically as possible. To say that it was the intention to let the contract to any other than the lowest bidder would be a construction which would in effect destroy one of the most beneficial and express purposes of the law; hence we must conclude that the awarding of the contract is to be to the lowest responsible bidder. In regard to the character of the work to be performed, its quality, or any details, they were not committed by the law to the discretion or judgment of the board in such manner that the settlement of any of them was connected with the awarding of the contracts in such a manner or degree as to make such settlement become of any moment in, or to enter into the determination of the board, of to whom the contract should be

awarded; hence there is in the awarding of the contracts under this law no discretion to be exercised as to any of the particulars to which we have alluded, which would preclude the issuance of a writ of *mandamus*, which will not, as a rule, be issued to control discretion.   The board, by the first section of the law, had committed to it the general supervision of the state printing, which, however, was to be exercised in the manner provided in the act.   We will say further in this connection that each bidder was required to place on file with his bid what may be designated as a preliminary bond in the sum of $5,000, to insure that he was a competent and responsible bidder and could and would perfect a contract if the successful bidder.   The question of the responsibility of the bidder was not left for the general judgment and discretion of the board.

In regard to the effect of the provision that the board may reject any and all bids, we will content ourselves with a quotation from the opinion of this court in the case of *State v. Saline County*, 19 Neb., 253: "The board is also given authority to reject any and all bids.   This is simply the reservation of a right to protect the interests of the county, as where there is a combination to prevent competition, or other cause, by reason of which the county would be defrauded.   But in such case the board is not absolved from the duty of letting the contract to the lowest bidder."   It may be added that a board may not arbitrarily or without cause reject bids.   The issuance of an order to the board to award this contract to the lowest bidder would not interfere with or control the board in the determination of any matter committed by the act to its judgment and discretion.   We are cited in the brief filed for respondents to the cases of the *State v. Lincoln County*, 35 Neb., 346, *State v. Dixon County*, 24 Neb., 106, and the *State v. Kendall*, 15 Neb., 262.   The first two cited were applications for writs to issue ordering county boards to award contracts for certain county printing to the lowest bidders.   The law did not require the boards

to advertise for bids, but in each instance it had been voluntarily done by the board. It was held that as the law did not require a letting of the contracts to the lowest bidders, but left it wholly within the discretion of the boards to determine, that notwithstanding the advertisements had been made and bids submitted, the discretion of the board in the matter of awarding the contracts could not be controlled by *mandamus*. In the case of *State v. Kendall*, *supra*, there were matters involved which would be connected with the contract for building to be let, which must be shown by the bidder to the board, and the board to decide whether the showing made was sufficient,—something committed to the judgment or discretion of the board to be settled prior to the letting of the contract, and until a favorable determination of which, as to him and his showing, no bidder could be awarded the contract. For decisions of this court on the subject of control of boards by *mandamus* in letting contracts and when to lowest bidder see *State v. York County*, 13 Neb., 57; *State v. Saline County*, 19 Neb., 253; *People v. Commissioners of Buffalo County*, 4 Neb., 150; *Merrick County v. Batty*, 10 Neb., 176; *State v. Farney*, 36 Neb., 546. See, also, *Boren v. Commissioners of Darke County*, 21 O. St., 311. The action of the board in attempting a severance of the contract and to let portions to different parties did not work and was not a rejection of all bids. It was no more than an attempt to award the contract in a manner not allowed by the law.

Prior to the change in January, 1897, individually, in state officers who are by law constituted the state printing board, the relator instituted an original action in this court, the object and purpose of which was to obtain the issuance of a writ of *mandamus* to compel the board to award it the contract for printing which it sought in the present action by the issuance of a similar writ out of the district court of Lancaster county to compel the board to award to it. To the pleading for relator in the original action in this court a demurrer was interposed for the

respondents therein. The cause was argued and sub-
mitted and an opinion filed March 3, 1897. It was then
held: "The statute providing that no bid for state print-
ing shall be considered unless accompanied by a bond
conditioned to give bond for the performance of the con-
tract should it be awarded, a bidder, though otherwise en-
titled to the contract, cannot have the aid of a writ of
*mandamus* to compel the awarding of the contract to him
when he does not show that his bid was accompanied by ·
the bond so required." From which it will be gathered
that the petition was determined insufficient because it
did not contain a statement that the preliminary bond
was filed with the board. Unless this bond was filed the
bid of relator need not have been considered, and the
petition without an allegation of the fact of such filing
was fatally defective and open to an attack by demurrer.
After the opinion was filed counsel for relator asked leave
to amend the pleading and to supply the further allega-
tion of the filing of the preliminary bond. This was de-
nied him, but such denial did not necessarily involve a
consideration or determination of the question of the suf-
ficiency of the pleading if amended in the particular des-
ignated. A motion for a rehearing or for a modification
of the judgment in this court to show that it was without
prejudice to a new action, was presented and overruled.
The judgment of this court in the original action was
interposed as a bar to the action in the present case in
the district court. In the pleadings of relator in the dis-
trict court, the fact that the preliminary bond was filed
was fully stated, and the question is presented whether,
when a pleading is attacked by a general demurrer, or on
the ground that there is not a cause of action stated
therein, and the demurrer is sustained and the cause dis-
missed, it will bar a future action for the same cause and
relief in which the pleading filed contains a further alle-
gation which renders the pleading sufficient. It seems,
both on reason and authority, that the answer must be
that it will not. The former adjudication determined no

more than that the pleading, as presented, was insuf-
ficient; that the facts therein stated did not constitute
a cause of action, not that the party presenting the plead-
ing had not a cause of action.  In the opinion in the case
of *Gould v. Evansville & C. R. Co.*, 91 U. S., 526, appears the
following statement directly in point: "From these sug-
gestions and authorities two propositions may be de-
duced, each of which has more or less application to cer-
tain views of the case before the court: (1.) That a judg-
ment rendered upon demurrer to the declaration or to a
material pleading setting forth the facts, is equally con-
clusive of the matters confessed by the demurrer as a
verdict finding the same facts would be, since the matters
in controversy are established in the former case, as well
as in the latter, by matter of record; and the rule is, that
the facts thus established can never after be contested
between the same parties or those in privity with them.
(2.) That if judgment is rendered for the defendant on
demurrer to the declaration, or to a material pleading in
chief, the plaintiff can never after maintain against the
same defendant, or his privies, any similar or concurrent
action for the same cause upon the same grounds as were
disclosed in the first declaration; for the reason that the
judgment upon such a demurrer determines the merits
of the cause and a final judgment deciding the right must
put an end to the dispute else the litigation would be end-
less.   Support to those propositions is found everywhere;
but it is equally well settled that if the plaintiff fails on
demurrer in his first action from the omission of an es-
sential allegation in his declaration which is fully sup-
plied in the second suit, the judgment in the first suit is no
bar to the second, although the respective actions were in-
stituted to enforce the same right; for the reason that the
merits of the cause, as disclosed in the second declaration,
were not heard and decided in the first action."   (See,
also, 2 Black, Judgments, secs. 707-9; 1 Freeman, Judg-
ments, sec. 267, wherein there is the following statement:
"A judgment on demurrer to the plaintiff's complaint is

conclusive of everything necessarily determined by it. If the court decides that plaintiff has not stated facts sufficient to constitute a cause of action, or that his complaint is otherwise liable to any objection urged against it, such decision does not extend to any issue not before the court on the hearing of the demurrer. It leaves the plaintiff at liberty to present his complaint in another action so corrected in form or substance as to be no longer vulnerable to the attack made in the former suit.") (See, also, cases cited in note 2; see, also, 21 Am. & Eng. Ency. of Law, 269, and cases cited in note; *Moore v. Dunn*, 41 O. St., 62; *Stowell v. Chamberlain*, 60 N. Y., 272; *Pepper v. Donnelly*, 8 S. W. Rep. [Ky.], 441.) In this action, commenced in the district court, there was a material averment in the pleading for relator, which was not alleged in its pleading in the former original action in this court, and which rendered the pleading in the district court sufficient as a statement of a cause of action. The adjudication in this court on the issues raised by the general demurrer, not being on the same state of facts, was not a bar to the second action. It follows, from the conclusions herein stated, that the judgment of the district court was erroneous and that the writ should have been allowed. The judgment must be reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.