### PACIFIC ELECTRIC CO. v. CITY OF LOS ANGELES et al.

(Circuit Court, S. D. California, S. D. November 1, 1902.)

#### No. 1,018.

1. JURISDICTION OF FEDERAL COURTS—FEDERAL QUESTION—IMPAIRMENT OF CONTRACT.

It is not essential to the jurisdiction of a federal court of a suit based on an alleged impairment of a contract by a state in violation of section 10 of article 1 of the constitution that there should be a valid contract, or that the impairment complained of should in fact be effected, but it is sufficient, for jurisdictional purposes, if the plaintiff claims the existence of such contract, and its impairment, in good faith.

2. MUNICIPAL CORPORATIONS—GRANTING OF FRANCHISES—STATUTORY POWER.

A provision of a statute authorizing and regulating the granting of franchises by municipalities, that "every franchise * * * shall be granted upon the conditions in this act provided, and not otherwise," is imperative, and requires the act to be strictly followed both as to the terms on which a franchise is granted and the time and manner of procedure.

---

¶ 1. Jurisdiction of federal courts in cases involving federal question, see notes to Bailey v. Mosher, 11 C. C. A. 308; Montana Ore-Purchasing Co. v. Boston & M. Consol. Copper & Silver Min. Co., 35 C. C. A. 7.

**8.** SAME—SALE OF FRANCHISE—CALIFORNIA STATUTE.

Act Cal. March 11, 1901, requires all franchises granted by municipal corporations to be sold to the highest bidder, and prescribes the procedure for granting the same, providing that every franchise "shall be granted upon the conditions in this act provided and not otherwise." It provides that notice shall be published and sealed bids received, to be opened at an hour fixed in the notice; that "at the time of the opening of said bids any responsible firm or corporation present or represented may bid for said franchise or privilege a sum not less than 10 per cent. above the highest sealed bid therefor, and said bid so made may be raised 10 per cent. by any other responsible bidder present and said franchise or privilege shall finally be struck off, sold and granted * * * to the highest bidder therefor." It further provides that the successful bidder shall pay the amount of his bid within 24 hours, and that, in case he or it shall fail so to do, then the said franchise or privilege "shall be granted to the next highest bidder therefor." *Held*, that such statute contemplated that the competition in bidding should take place at the time the sealed bids were opened, and before the franchise was "struck off, and sold"; that the authority of a city council, on the failure of the accepted bidder to deposit the amount of his bid as required, was limited to the granting or refusing of the franchise to the next highest bidder, and its acceptance of an oral bid thereafter made was ultra vires and created no valid contract.

In Equity. On motion for preliminary injunction and demurrer to bill.

J. S. Chapman, Bicknell, Gibson & Trask, Hunsaker & Britt, Works & Lee, Dunn & Crutcher, and W. F. Fitzgerald, for complainant.

W. B. Mathews, Camp & Lissner, Gibbon, Thomas & Halstead, P. R. Wilson, Garret W. McEnerney, and E. E. Millikin, for defendants.

WELLBORN, District Judge. Complainant brings this suit against the city of Los Angeles and other defendants to obtain a decree establishing complainant's ownership of the street railway franchise described in the bill, to vacate and set aside certain orders or resolutions of the city council of Los Angeles purporting to devest complainant of said franchise, and to enjoin any interference by defendants with the construction and operation of the railway authorized by said franchise. The matters alleged in the bill are these:

Complainant and the city of Los Angeles, one of the defendants, are California corporations, the latter being a municipal corporation, under a freeholders' charter. St. Cal. 1889, p. 456. The other defendants are also citizens of said state, except the Los Angeles Traction Company, which is a corporation organized under the laws of the state of Illinois. The legislature of the state of California, at its session held in the year 1901, passed an act entitled "An act providing for the sale of street railroad and other franchises in municipalities, and providing conditions for the granting of such franchises by legislative or other governing bodies, and repealing conflicting acts," which act became a law of said state on the 11th day of March, 1901, and is in the words and figures following:

"Section 1. Every franchise or privilege to erect or lay telegraph or telephone wires, to construct or operate street railroads upon any public street or highway, to lay gas pipes for the purpose of carrying gas for heat and power, to erect poles or wires for transmitting electric heat and power along or upon any public street or highway, or to exercise any other privilege

whatever hereafter proposed to be granted by boards of supervisors, boards of trustees, or common councils, or other governing or legislative bodies of any city and county, city or town within this state, except steam railroads and except telegraph or telephone lines doing an interstate business, and renewals of franchises for piers, chutes or wharves, shall be granted upon the conditions in this act provided, and not otherwise.

"Sec. 2. An applicant for any franchise or privilege above mentioned shall file with the governing or legislative body of the municipality an application, and thereupon said governing body shall, in its discretion, and, when the application is accompanied with a petition praying that the same be granted, signed by the owners of three-fourths of the frontage of the real property fronting along and upon the route of the franchise applied for, must advertise the fact of said application, together with a statement that it is proposed to grant the same, in one or more newspapers of the city and county, city or town wherein the said franchise or privilege is to be exercised. Said advertisement must state that bids will be received for such franchise, and that it will be awarded to the highest bidder, and the same must be published in such newspaper once a day for ten successive days, if it be a daily newspaper, and if there be no daily paper published in such city and county, city or town, then it shall be published in a weekly newspaper once a week for four successive weeks, and in either case the full publication must be completed not less than twenty (20) nor more than thirty (30) days before any further action can be taken thereon.

"Sec. 3. The publication must state the character of the franchise or privilege to be granted, the term for which it is granted, and, if it be a street railroad, the route to be traversed; that sealed bids therefor will be received up to a certain hour and day named therein, and that the successful bidder and his assigns must, during the life of said franchise, pay to the municipality two per cent (2%) of the gross annual receipts of the person, partnership or corporation to whom the franchise is awarded, arising from its use, operation or possession. No percentage shall be paid for the first five (5) years succeeding the date of the franchise, but thereafter such percentage shall be payable annually; and in the event said payment is not made, said franchise shall be forfeited; provided further, that if the franchise be a renewal of a right already in existence, the payment of said percentage of gross receipts shall begin at once.

"Sec. 4. In case the franchise granted shall be an extension of an existing system of street railroad then the gross receipts shall be estimated to be one half of the proportion of the total gross receipts of said system which the mileage of such extension bears to the total mileage of the whole system, and said estimate shall be conclusive as to the amount of the gross receipts of said extension.

"Sec. 5. Said advertisement shall also contain a statement that the said franchise will be granted to the person, firm or corporation who shall make the highest cash bid therefor; provided only, that at the time of the opening of said bids any responsible firm or corporation present, or represented, may bid for said franchise or privilege a sum not less than ten per cent above the highest sealed bid therefor, and said bid, so made, may be raised ten per cent by any other responsible bidder present, and said franchise or privilege shall finally be struck off, sold and granted by said governing body to the highest bidder therefor, in gold coin of the United States, and said successful bidder shall be required to deposit with said governing body, or such person as it may direct, the full amount of his or its said bid, within twenty-four hours thereafter; and in case he or it shall fail so to do, then the said franchise or privilege shall be granted to the next highest bidder therefor.

"Sec. 6. Work to erect or lay telegraph or telephone wires, to construct street railroads, to lay gas pipes for the purpose of carrying gas for heat and power, to erect poles or wires for transmitting electric heat or power, along or upon any public street or highway, or to exercise any privilege whatever, a franchise for which shall have been granted in accordance with the terms of this act, shall be commenced in good faith within not more than four months from the granting of any such franchise, and if not so-

commenced within said time said franchise so granted shall be declared forfeited, and shall be completed within not more than three years thereafter, and if not so completed within said time said franchise so granted shall be forfeited; provided, that for good cause shown the governing or legislative body may by resolution extend the time for completion thereof, not exceeding three months.

"Sec. 7. The grantee of every franchise or privilege granted under this act shall file a bond running to said city and county, city or town, with at least two good and sufficient sureties to be approved by such governing body, in a penal sum by it to be prescribed and set forth in the advertisement for bids, conditioned that such bidder shall well and truly observe, fulfill, and perform each and every term and condition of such franchise, and that in case of any breach of condition of such bond, the whole amount of the penal sum therein named shall be taken and deemed to be liquidated damages, and shall be recoverable from the principal and sureties upon said bond. Said bond shall be filed with such governing body within five days after such franchise is awarded, and in case said bond shall not be so filed, the award of such franchise shall be set aside, and the same may be granted to the next lowest bidder, or again offered for sale, in the discretion of said governing body.

"Sec. 8. It shall be the duty of the attorney-general, upon the complaint of any municipality, or, in his discretion, upon the complaint of any taxpayer, to sue for the forfeiture of any franchise granted under the terms of this act, for the non-compliance with any condition thereof.

"Sec. 9. No clause or condition of any kind shall be inserted in any franchise or grant offered or sold under the terms of this act, which shall directly or indirectly restrict free and open competition in bidding therefor, and no clause or provision shall be inserted in any franchise offered for sale, which shall in anywise favor one person, firm or corporation, as against another, in bidding for the purchase thereof.

"Sec. 10. Any member of any common council or other governing or legislative body of any city and county, city or town of this state, who, by his vote, violates or attempts to violate the provisions of this act, or any of them, shall be guilty of a misdemeanor, and may be punished therefor, as provided by law, and may be deprived of his office by the decree of a court of competent jurisdiction, after trial and conviction.

"Sec. 11. All acts or parts of acts in conflict herewith are hereby repealed; provided, however, that nothing herein contained shall be construed as repealing or amending the following acts, to-wit: 'An act relating to the granting by the counties and municipalities of franchises for the construction of paths and roads for the use of bicycles and other horseless vehicles,' approved March twenty-seventh, eighteen hundred and ninety-seven; 'An act to authorize cities and towns to grant franchises for the construction and maintenance of railroads beyond the limits of such cities or towns leading to public parks owned thereby,' being chapter forty of the laws of eighteen hundred and ninety-seven of the state of California.

"This act shall take effect immediately." St. Cal. (Extra Sess. Thirty-third Legislature, 1900) p. 265.

Complainant, under and pursuant to said act, on the 25th day of November, 1901, presented to the governing body, to wit, the council of the city of Los Angeles, its application for an electric street railway franchise upon certain streets of said city. Said council, on January 6, 1902, adopted and caused to be published, as provided in said act, a "notice of sale of a street railroad franchise," which notice defines the route of said proposed road, the terms and conditions upon which the franchise will be offered for sale and granted, and concludes as follows:

"Notice is also hereby given that sealed bids in writing will be received for the said franchise up to 11 o'clock in the forenoon of the 10th day of February, 1902; that the bids received will be opened at that time; that

all bids must be for the payment of a stated sum in gold coin of the United States; and that said franchise will be granted to the person, firm, or corporation who shall make the highest cash bid therefor; provided, only, that at the time of opening said bids any responsible firm or corporation, present or represented, may bid for said franchise a sum not less than 10 per cent. above the highest sealed bid therefor, and said bid so made may be raised 10 per cent. by any responsible bidder present, and said franchise will finally be struck off, sold, and granted by said city council to the highest bidder therefor in gold coin of the United States, and said successful bidder will be required to deposit with said city council, or such person as it may direct, the full amount of his or its said bid within 24 hours thereafter, and, in case he or it shall fail to do so, then the said franchise shall be granted to the next highest bidder therefor, and that the city council reserves the right to reject any or all bids; provided, that no bid, whether sealed or otherwise, shall be received or considered unless the same be in writing and subscribed by a responsible bidder, or by his or its duly authorized agent."

On the day named in the notice, at 11 o'clock a. m., the sealed bids were opened and found to be as follows: One by complainant of $25,000, one by the defendant William S. Hook of $37,500, one by the defendant E. A. Davis of $139,000, and one by E. Murray of $415,000. There being no bid of 10 per cent. upon the amount bid by said Murray, said council on the same day accepted the bid of said Murray, and ordered that the said franchise be struck off, sold, and granted to him, and that the city treasurer be authorized and directed to receive the money to be paid for such franchise by said Murray, and ordered and declared that the period of 24 hours within which the said Murray is allowed to pay for the said franchise should expire at 3:15 o'clock p. m. of February 11, 1902. The three bids other than complainant's were made in the interest of the defendant corporation ' the Los Angeles Traction Company, and with the fraudulent intent to prevent competition in the bidding before the council; and the bid of $415,000 was made at the suggestion and for the benefit of said Los Angeles Traction Company, and with the fraudulent intent to prevent any further bidding when the sealed bids were opened. The said Murray is not a person of any financial standing, and was not, at the time said bid was made, nor has he been at any time since, worth $1,000, and could not, either from funds or credit of his own, have paid, nor did he ever intend to pay, the said sum of $415,000, or any part thereof, and all of these matters were known by the said Los Angeles Traction Company, said E. A. Davis, and said William S. Hook. Said Murray did not pay the $415,000 within 24 hours, and never offered to pay said, or any, sum at any time, and never appeared before said council on the 11th day of February, 1902, or at any other time. The said Davis and the said Hook, agents of said Traction Company, appeared before said council on said 11th day of February, 1902, and when said 24 hours expired, and, in pursuance of the fraudulent scheme to prevent competition in bidding, claimed that said council had no power, under said act, to do anything or take any proceedings looking to the sale of said franchise, other than to accept the bid next highest to that of said Murray, namely, the bid of said Davis for the sum of $139,000, and to sell and grant to said Davis said franchise, and demanded that said franchise be awarded to said Davis, under said bid, and for the benefit of said Los Angeles Traction Company, and tendered to said council the amount of the bid of said Davis, to wit, $139,000, gold coin,

but which tender was refused by said council. Said Davis throughout said proceedings was acting for and on behalf of and in the interest of said Los Angeles Traction Company, and sought to obtain the grant of said franchise to himself, but for the benefit of said company. Said Davis and Hook and said Traction Company did then, and do now, claim an interest in said franchise, and claim that said Davis is the owner thereof, and make said claim adversely to complainant, which claim is without any foundation whatever, and said parties, nor either of them, has any right, title, or interest in said franchise. On the 11th day of February, 1902, and prior to the expiration of said 24 hours, complainant, being previously apprised of the fact that the bid of said Murray was a fraudulent contrivance of said Traction Company, William S. Hook, and E. A. Davis to prevent further bidding, and knowing that said Murray would not appear within the 24 hours and pay said bid, or any part thereof, presented in writing a bid of $152,900 for said franchise, being 10 per cent. over and above the bid of said Davis, and, when said 24 hours had expired, offered said sum to said council. Upon the presentation by complainant of said bid of $152,900, said council called before them the city treasurer, who informed said council that there had been no payment on Murray's bid, and thereupon said council, by a vote of seven of its members for and two against, passed a motion declaring said Murray a fraudulent and irresponsible bidder. After said motion was passed, complainant bid for said franchise, the same described in said notice of sale, the sum of $152,900, and at the time presented to said council a certificate of deposit, drawn on the Farmers' & Merchants' Bank of Los Angeles, payable to said city, for said sum of $152,900. Thereupon, and at the same meeting, the president of the council called for bids to purchase said franchise, over the one so made by complainant, but no other bid was received or offered, and thereupon said council ordered that said street-railway franchise be struck off, sold, and granted to complainant for said sum of $152,900, and that said treasurer be authorized and directed to receive said purchase money. Pursuant to said order, said sum of $152,900 was paid by complainant to the treasurer of said city in gold coin of the United States for said franchise, and was accepted by said treasurer and said council, and immediately thereupon complainant delivered its bond, with two sureties, for $25,000, conditioned for the faithful performance of the terms of said street-railway franchise, and otherwise in conformity with the act of the legislature of said state, to said council, and thereupon said council approved said bond, and caused the same to be filed in the office of the city clerk of said city. After complainant paid said sum of $152,900 to said city treasurer, and executed and delivered its said bond to said city council, and after said council had struck off, sold, and granted to complainant said franchise, and the same had vested and accrued, said council passed an ordinance granting said rights, privileges, and franchise to complainant, and presented the ordinance to M. P. Snyder, as mayor of said city, and said Snyder afterwards, and about the 21st day of February, 1902, returned said ordinance without having affixed his signature thereto or approved the same, and with his objections to said ordinance, and thereafter, to wit, on the 21st day of February, 1902,

said council, by reason of said mayor's disapproval of said ordinance, adopted a motion that said ordinance be reconsidered, and upon the vote being again taken upon the passage of said ordinance, notwithstanding the mayor's veto, said council voted against the passage of said ordinance. Thereupon, and on the same day, said council passed a resolution pretending and purporting to order any and all bids for said electric street railway franchise, including the bid made by complainant, to be rejected, and directing and authorizing said treasurer of said city to refund to complainant said sum of $152,900, and ordering said city clerk to return said bond, executed as hereinbefore stated. The said clerk acting under said instructions, offered to return said sum of money and said bond to complainant, but complainant refused to accept either said money or bond, denying the right of said council to annul or in any manner affect the franchise it claimed to have acquired under and by virtue of the proceedings already set forth. At the same session of said council a motion was carried that the applications of complainant for franchises over certain streets in said city be referred to the board of public works, and that said board redraft notice of sale of the same, and that among said applications referred to in said motion was included the said application upon which the above alleged sale was made to complainant.

Said council threatens to, and will, unless restrained by this court, offer said franchise, rights, and privileges for sale, and will, if any bids are made therefor, sell or attempt to sell the same, and grant or attempt to grant the same rights, privileges, and franchise to any person making the highest bid therefor at said sale. Said council and other public authorities threaten and intend to prevent complainant from constructing said street railway on any street in said city, and will, unless restrained by this court, forcibly prevent complainant from so doing; and on the 26th day of February, 1902, said council passed an order instructing the mayor, street superintendent, or the chief of police to stop and prevent any attempt complainant might make to construct any street railway on any of said streets, with all the force at their command.

The matter in dispute exceeds, exclusive of interest and costs, the value of $2,000, and is of a value not less than $152,900. Several affidavits have been filed by the parties, respectively, but they do not set up any additional facts which materially affect the legal aspects of the case. Two demurrers have been interposed, one jointly by all the defendants, except the Los Angeles Traction Company, William S. Hook, and E. A. Davis, and the other by the last three defendants. For causes, both demurrers allege want of jurisdiction and equity, and one of them also alleges uncertainty in the bill.

On the question of jurisdiction, complainant contends that the proceedings set forth touching the street-railway franchise in question, up to and including the acceptance, approval, and filing of the bond required by the statute, constituted a complete and valid contract between said city and complainant, and vested in the latter said franchise, and that the resolutions or orders of said council, and the other proceedings taken and threatened for the purpose of vacating and setting aside said contract, are within the prohibitions of section 10 of article

1 of the constitution of the United States, and section 1 of the fourteenth amendment to said constitution. The writer of this opinion has recently (November 1, 1902) decided a case in this court (Riverside & A. Ry. Co. v. City of Riverside, 118 Fed. 736) whose jurisdictional features bear such close resemblance to those here presented that the opinion in that case may be fittingly adopted in this, and, for the reasons and upon the authorities there given and cited, complainant's contention here as to a federal question is sustained.

Coming now to the other cause of demurrer, want of equity in the bill, the next question to be considered is whether or not there was a valid grant to complainant of the street-railway franchise in question. On this branch of the case, complainant, at pages 156 and 183 of its brief, filed June 10, 1902, states its contention thus:

"The power to grant this franchise comes from the act of 1901. * * * We next contend that the question whether the plaintiff has the rights which it here claims is dependent upon the statute of 1901, and not any other authority whatever, and that, under that act, there was a complete grant."

·Defendants' objections to the validity of said alleged grant may be generalized under two heads: First, that in the proceedings had by the city council of Los Angeles for the sale of said franchise certain requirements of said act of 1901 were not complied with, and, therefore, there was no valid grant; second, that said act of 1901 is void, because it undertakes to delegate municipal functions to a special commission, in violation of article 11 of section 13 of the constitution of California, and, furthermore, said act, if constitutional, does not apply to the city of Los Angeles, because it concerns only municipal affairs, and, as to such affairs, said city, by article 11 of section 6 of the constitution of California, as amended in 1896, is exempt from the operation of general laws, and subject only to its charter, whose provisions require, for granting a franchise, the conjoint action, by an ordinance, of council and mayor. Either of these objections, if good, is fatal to the alleged grant, and I proceed at once to the consideration of the first.

In determining whether or not the council, in its proceedings for the disposition of said franchise, lawfully complied with the requirements of said act of 1901, the rule that mode is the measure of power, and aside from the designated mode there is no power, should be carefully observed. City of Ft. Scott v. W. G. Eads Brokerage Co. (C. C. A.) 117 Fed. 51; Board v. Templeton, 51 Ind. 266; Woodruff v. Berry, 40 Ark. 253; Sadler v. Board, 15 Nev. 39; State v. Cornell, 52 Neb. 25, 71 N. W. 961; Webster v. French, 12 Ill. 302; Zottman v. City and County of San Francisco, 20 Cal. 97, 81 Am. Dec. 96; McCracken v. City of San Francisco, 16 Cal. 620; Heidelberg v. St. Francois Co., 100 Mo. 69, 12 S. W. 914. It should also be borne in mind that negative words in a statute show an intent to make its provisions imperative, and require strict performance, both as to time and manner, since section 1 of said act provides that "Every franchise * * * to construct or operate street railroads * * * shall be granted upon the conditions in this act provided, and not otherwise." 23 Am. & Eng. Enc. Law (1st Ed.) 455; Koch v. Bridges, 45 Miss. 247; Hurford v. City of Omaha, 4 Neb. 336; Cooley, Const. Lim.

118 F.—48

(6th Ed.) 89. In the present case, additional energy is imparted to the rules of construction above stated by section 10 of said act of 1901, which is as follows:

"Any member of any common council or other governing or legislative body of any city and county, city or town of this state, who, by his vote, violates or attempts to violate the provisions of this act, or any of them, shall be guilty of a misdemeanor, and may be punished therefor, as provided by law, and may be deprived of his office by the decree of a court of competent jurisdiction, after trial and conviction."

I come now directly to the inquiry whether or not the proceedings of the council conformed, in all essentials, to the requirements of said act of 1901. Defendants, among other alleged illegalities, contend that the award of the franchise to complainant, on its bid of $152,900, after Murray's default, was a fatal departure from that part of section 5 of said act of 1901, which provides—

"That at the time of the opening of said bids any responsible firm or corporation present or represented may bid for said franchise or privilege a sum not less than ten per cent above the highest sealed bid therefor, and said bid so made may be raised ten per cent by any other responsible bidder present, and said franchise or privilege shall finally be struck off, sold and granted by said governing body to the highest bidder therefor, in gold coin of the United States, and said successful bidder shall be required to deposit with said governing body, or such person as it may direct, the full amount of his or its said bid, within twenty-four hours thereafter; and in case he or it shall fail so to do, then the said franchise or privilege shall be granted to the next highest bidder therefor."

The precise question here presented is this: When must the competition subsequent to sealed bids, for which said section provides, take place? To this question, the first clause of the foregoing extract from the section makes answer as follows:

"At the time of the opening of said bids any responsible firm or corporation present, or represented, may bid for said franchise or privilege a sum not less than ten per cent above the highest sealed bid therefor, and said bid, so made, may be raised ten per cent by any other responsible bidder present, and said franchise or privilege shall finally be struck off, sold and granted by said governing body to the highest bidder therefor, in gold coin of the United States."

This clause does not confine the subsequent competition to the precise moment of opening the sealed bids, but it does make it the next step in the series of steps prescribed by said section, and thus requires it to take place before the franchise has been struck off to the highest bidder. Said clause certainly does not contemplate that bidding shall continue after the franchise has been struck off. With that construction the clause would be meaningless. Again, the last clause of said section, which, referring to default of the successful bidder in the matter of the deposit required of him, is as follows: "And in case he or it shall fail so to do, then the said franchise or privilege shall be granted to the next highest bidder therefor,"—forbids, by unavoidable implication, the idea that there can be any competition after such default. It will be observed that the words "struck off, sold and," used in a previous clause of the section, are omitted from the last clause. These words, "struck off" and "sold," which are ordinarily employed, and particularly appropriate, to designate the closing of a public sale to the

highest bidder, such as that provided for by the clause where these words appear, would have been out of place in, and hence were designedly omitted from, said last clause, for the reason that it provides for a contingency, namely, the failure of the successful bidder to deposit the amount of his bid, which can only arise after the bidding has been closed. When the bidding has been closed and the successful bidder declared, or, in other words, when the property has been "struck off" and "sold," the next and last thing to be done is a formal transfer of ownership by such means as are suited to the particular case, and this final act is fully and accurately prescribed in said last clause by the use of the word "granted." Under said clause there is to be no striking off, no selling; those stages of competition have been passed; the only act to be performed is that of granting. Complainant's construction of said clause, namely: "The meaning fairly is nothing more nor less than this, that it should be struck off to him who next bids the highest therefor,"—is, to my mind, wholly inadmissible, and must be rejected. It is inconsistent, as I have just shown, with the peculiar phraseology of the clause, and, as appears below, does violence to the general plan of the section. If the legislature had intended that there should be further competition after default of the successful bidder, it would have chosen apt words to express the intention, rather than language which implies the contrary, and, besides, would have prescribed fully the nature and duration of the subsequent competition, that is, whether it was to be by sealed or open bids, and when it was to close. The various steps for which the section provides, consecutively arranged, are these: First, opening of the sealed bids; second, opportunity for further competition, in the manner and upon the terms prescribed in the section; third, striking off of the franchise to the highest bidder; fourth, allowance of 24 hours to the successful bidder to deposit the amount of his bid; and, fifth, in case said bidder fails to make the deposit, grant of the franchise to the next highest bidder therefor. I do not mean that each step after the first must follow immediately, in point of time, its nearest antecedent, but that nothing affecting the result of the competition can intervene between any two of said steps. Exigencies may arise at any stage of the proceedings to justify a postponement or adjournment of the whole matter, but, whenever its consideration is resumed, the order of progression I have indicated must be adhered to.

In the case at bar, therefore, when the sealed bids were opened, and no bid of 10 per cent. above the amount bid by Murray was then made, the action of the council in striking the franchise off to him, and fixing the time at which the 24 hours allowed by law for depositing the amount of his bid would expire, namely, 3:15 o'clock p. m. of February 11, 1902, was regular. When the time thus fixed had expired, and Murray had failed to make the required deposit, the action that should have been next taken is prescribed in the last clause of said section already partially considered, which provides that, if the successful bidder fails to make the deposit required of him, "the franchise shall be granted to the next highest bidder therefor." When, speaking concretely, the contingency referred to in said clause, namely, Murray's failure to deposit the amount of his bid, occurred, in the afternoon of

February 11, 1902, it was then the duty of the council to grant the franchise to the next highest bidder, unless there was some sufficient reason for a refusal. This qualification of the council's duty I make because of the charge in the bill, that the next highest bid was fraudulent. Assuming the truth of this charge, which must be done on demurrer, the council ought not to have granted the franchise to said bidder. When it refused to do so, however, its power in the premises was exhausted, because said act of 1901 makes no provision for any subsequent proceeding, and the alleged grant of the franchise thereafter to complainant was without authority and void. The only way said franchise could have been lawfully granted, after its refusal to the next highest bidder, was under and pursuant to a new advertisement.

Complainant's argument that this construction of said act impairs its efficiency by enabling designing and unscrupulous persons to defeat the disposition of any franchise offered for sale under said act, if not without force, can but be deemed inconclusive, for the rule is well settled that the language of a statute, when plain and unequivocal, determines its meaning, regardless of consequences. Bartlett v. Morris, 9 Port. 268; 4 Bac. Abr. 652; Coffin v. Rich, 71 Am. Dec. 563. The truth is, said act of 1901 never contemplated the scandalous frauds here charged, without denial, against some of the defendants, and hence, it may be, no adequate safeguards against them were erected. This defect in the law, however, if it exists, is an omission to be supplied by the legislature, not by the courts.

The declaration of the council, made after Murray's default, that he was a fraudulent and irresponsible bidder, and that his bid was null and void, is an immaterial circumstance. If such an inquiry was authorized, it must have preceded the order striking off the franchise to Murray, since said order necessarily determined the lawfulness of his bid, and there was no power in the council to review said order. Belser v. Hoffschneider, 104 Cal. 455, 38 Pac. 312. After the franchise had been struck off, all the council could lawfully do, under the pending advertisement, was to allow Murray 24 hours to make the deposit, and, if he failed to do so, grant, or, on sufficient grounds, refuse to grant, the franchise to the next highest bidder.

For the reasons above given, I am of opinion that the complainant has not acquired the franchise it here claims, nor has it any valid contract with the city in relation thereto. This conclusion renders it unnecessary for me to pass upon the other questions which have been argued by counsel, and are outlined in an earlier part of this opinion.

The motion for injunction will be denied.