THOMAS M. DAY, APPELLANT AND CROSS-APPELLEE, V. CITY
OF BEATRICE, A MUNICIPAL CORPORATION, ET AL., APPELLEES
AND CROSS-APPELLANTS.

101 N. W. 2d 481

Filed March 4, 1960.   No. 34710.

*Max Kier,* for appellant.

*Anne P. Carstens* and *Perry, Perry & Nuernberger,* for appellees.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

The plaintiff brought this suit as an unsuccessful bidder upon a public letting of a garbage disposal contract by the city of Beatrice to enjoin the performance of a contract entered into by the city and the defendant Vicars and to recover damages, and for a declaration of plaintiff's rights, status, and legal relationship with respect to said contract and the alleged extension of a former contract he had with the city. The trial court found for the defendants and dismissed the suit, subject to the right of plaintiff to proceed at law for damages for the violation of the alleged extension agreement. The plaintiff has appealed.

The evidence shows that the plaintiff and the city entered into a contract on September 16, 1952, by which plaintiff was to collect and dispose of garbage from October 1, 1952, to October 1, 1957, for a consideration stated in the contract. On August 31, 1957, the city council directed the city clerk to advertise for bids for the collection and disposal of garbage for a 5-year period commencing on October 1, 1957, the bids to be submitted not later than September 12, 1957, at 7 p.m. Bids were considered by the city council at the stated hour. A

motion was made to accept the bid of Vicars on which four councilmen voted in the affirmative and four voted in the negative. The mayor then voted in the affirmative and declared the motion carried. The mayor and clerk were then authorized to execute a contract with Vicars on behalf of the city. On September 30, 1957, the city council by a majority vote purported to ratify and confirm the contract between the city and Vicars for 5 years commencing on October 1, 1957, and directed the mayor to sign the contract.

The evidence shows further that on August 26, 1957, the city council voted to extend plaintiff's 5-year contract which terminated on October 1, 1957, for a period of 60 days. On September 30, 1957, the city council withdrew and canceled the offer to extend the former contract for 60 days, and a written notice to this effect was served at 7:25 a.m., on the following morning. The petition in this case was filed on September 21, 1957.

It is the contention of the plaintiff that he had a valid extension of his former contract from October 1, 1957, to December 1, 1957; that he was the low bidder at the letting of the new contract; and that the contract with Vicars was void in that it was not authorized by a majority vote of the council and that a valid appropriation of funds had not been made concerning the expenditures required by the contract.

With respect to the contention that plaintiff had a valid extension of the contract of September 16, 1952, the evidence is substantially as follows: At the council meeting held on August 26, 1957, the council voted to extend the contract of September 16, 1952, for a period of 60 days. On September 30, 1957, a motion withdrawing the offer to extend the contract for 60 days was adopted. No written agreement of extension was entered into. It is the contention of plaintiff that the mayor advised him of the extension and that he accepted it. The mayor denies offering the extension of the contract on behalf of the city, and that there was any acceptance of any

such extension. The evidence on this point is in direct conflict. The trial court made no findings of fact on this issue and in effect left it for determination in the action for damages for violation of the alleged extension agreement which was reserved to the plaintiff by the trial court's decree. Defendants have cross-appealed and contend the evidence shows that plaintiff has no cause of action for damages for the breach of the extension agreement, and that their motions to dismiss should have been sustained at the close of all the evidence.

The evidence is in direct conflict as to whether or not there was an offer by the city and an acceptance of the offer of the 60-day extension agreement. But assuming that an offer and acceptance was established, his subsequent conduct was such as to defeat the remedy he now seeks. Plaintiff contends that he had a valid oral extension agreement for 60 days commencing on October 1, 1957. Subsequent thereto, in response to the advertisement for bids, plaintiff placed his bid with the city for the 5-year contract for the period from October 1, 1957, to October 1, 1962. This latter contract included within its terms the 60-day period of the claimed extension of the former contract, which he knew was to be an exclusive contract for the collection of garbage in the city for the stated period. At the consideration of the bids on September 12, 1957, plaintiff was present when the bids were opened and considered, and the contract awarded to Vicars. He admits in his testimony that he did not object or make it known that he was claiming a valid extension agreement for the first 60 days of the exclusive contract upon which he bid. He did not furnish insurance policies required until September 30, 1957, a date subsequent to the consideration of the bids and the letting of the contract to Vicars. His conduct indicates a complete acquiescence in the manner pursued by the city in awarding the contract for 5 years commencing with October 1, 1957, with full knowledge on his part. Under such circumstances no basis

exists for the granting of equitble relief with respect to the asserted extension agreement. In Propst v. Board of Educational Lands & Funds, 156 Neb. 226, 55 N. W. 2d 653, an injunction suit involving a similar situation, this court said: "He made no effort to have the court by order in this case delay or postpone the sale proceedings until the case could be heard and decided. On the contrary he, will full knowledge of all the facts, concurred and assisted in, and became the beneficiary of the sale of the lease on the land, the identical thing he was by this action asking the court to prevent. His conduct was inconsistent to a degree sufficient to defeat the granting by the court of the relief he asked."

The general rule is that a party may lose his right to an injunction through his own acquiescence in a breach by the other party. Acquiescence may be shown in various ways, such as delay in making objection, or by consenting to the breach in question, whether the consent is express or implied from acts inconsistent with an intention to enforce the terms of the contract. 43 C. J. S., Injunctions, § 80, p. 554.

Plaintiff contends that the council did not authorize the contract with Vicars by the required vote. Without giving consideration to the question as to whether or not plaintiff could properly raise this question, we shall determine the merits of plaintiff's contention. The evidence shows the following: At the council meeting held on September 12, 1957, a motion to accept the bid of Vicars was duly made and the vote of the council thereon was equally divided. The mayor voted in the affirmative and declared the motion carried. The plaintiff contends that the mayor was not authorized to vote on the motion and consequently the motion failed of adoption. Under section 16-503, R. R. S. 1943, the mayor of a city of the first class is not authorized to cast the deciding vote on a resolution, order, or ordinance to enter into a contract or to accept work done under a contract. See Rohrer v. Hastings Brewing Co., 83 Neb.

111, 119 N. W. 27. The action of the council in accepting the bid of Vicars on September 12, 1957, was therefore a nullity. The evidence shows, however, that the city council, on September 30, 1957, with a majority of the council voting in the affirmative, ratified and confirmed the acceptance of the bid of Vicars and authorized the mayor to execute the contract with Vicars. The action of the council in this respect was sufficient to authorize a valid contract. It is a familiar rule, consistently upheld by this court, that where the power to contract exists but was irregularly exercised, it may subsequently be adopted or ratified with the same resulting effect as though properly done under previous authority. Neisius v. Henry, 142 Neb. 29, 5 N. W. 2d 291.

The plaintiff contends also that the contract between the city and Vicars was void because no sufficient appropriation of funds had been made to cover the obligation of the contract as required by section 16-501, R. R. S. 1943. In this connection we do not think the plaintiff, suing in his individual capacity, can properly raise this issue. Such an issue can be raised only by a party to the contract or by a taxpayer of the city. In the instant case, the plaintiff brings the action in his capacity as an unsuccessful bidder. He does not allege that he is a taxpayer or that he brings the action as such. It is fundamental that one who brings a representative action against a municipality must allege and prove that he is such a taxpayer. 64 C. J. S., Municipal Corporations, § 2164 (3), p. 998. An unsuccessful bidder in the letting of a contract is not a proper party to bring a representative action. 43 C. J. S., Injunctions, § 120, p. 659, and cases therein cited. We necessarily conclude that plaintiff cannot properly raise the question as to whether or not a proper appropriation of funds has been made to cover the obligation of the contract between the city and Vicars.

The defendant contends that he was the low bidder at

the contract letting and entitled as a matter of law to the contract for the collection and disposal of garbage. The nature of the contract required that bids be made on various phases of the operation of collecting and disposing of garbage. The city was required to pay for the operation of the sanitary land fill in securing the burial of garbage, rubbish, and trash. Plaintiff bid $500 a month on this item. Vicars' bid thereon was $400 a month. Plaintiff bid $1.50 a month as the customer charge for the collecting of garbage with a reduced charge of $1.25 a month if paid by the 10th of the month. Vicars' bid was also $1.50 a month as the customer charge with a reduced charge of $1.35 a month if paid by the 10th of the month. The proposed bids provided for an alternative bid for the disposal of garbage if the city at some future time installed an incinerator. Plaintiff bid $300 a month if this alternative operation came into existence. Vicars made no bid on the alternative operation. There is evidence in the record of improper disposal of garbage by the plaintiff under the terms of his previous contract with the city.

The difference in the two bids was sufficient to authorize the exercise of discretion by the council in determining the lowest responsible bidder. While the implication of section 73-103, R. R. S. 1943, is that contracts will be awarded to the lowest bidder, the money bid may not always constitute it the lowest responsible bid. Plaintiff relies upon State ex rel. Woodruff-Dunlap Printing Co. v. Cornell, 52 Neb. 25, 71 N. W. 961, but in that case, which involved a contract for printing, the only possible difference in the bids was the price bid. We held that the lowest bid must be accepted under such circumstances, and that no discretion existed in awarding the contracts. In the instant case there were differences in the amounts bid on the various phases of the operation as it affected the city and the users of the service. There was discretion to be exercised by the council in determining the lowest responsible bid.

Where the evidence indicates that a city council, in exercising its judgment, acted honestly upon the facts before it in the belief that its action was for the best interests of the city, and there is no showing that it acted arbitrarily, or from favoritism, ill will, fraud, or collusion, or similar motives, it is not the province of the courts to substitute their judgment for that of the city council. State ex rel. Nebraska B. & I. Co. v. Board of Commissioners, 105 Neb. 570, 181 N. W. 530. It is presumed that a city council acts in good faith, with honest motives, and for the purpose of promoting the public good and protecting the public interest. Best v. City of Omaha, 138 Neb. 325, 293 N. W. 116; 43 Am. Jur., Public Works and Contracts, § 64, p. 806. In the Best case we said: "The term 'responsible' as used in the statute is not limited in its meaning to mere financial responsibility, but includes within its purview the general ability and capacity of the bidder to perform the work, his facilities and suitability for the task, and those qualities which he must necessarily have in order that he be able to perform the contract strictly in accordance with its terms." Under the foregoing holdings of this court we find nothing in the record that warrants a judicial review of the action of the city council in determining Vicars to be the lowest responsible bidder.

Plaintiff contends that the failure of Vicars to make an alternative bid to become effective if and when the city installed an incinerator, nullifies his bid and any right to the garbage contract. We think not. This situation was before the court in State ex rel. Nebraska B. & I. Co. v. Board of Commissioners, *supra*, wherein it was said: "In the proposal to bidders certain items of the work to be let were submitted in the alternative. At the time of the opening of the bids, the board decided upon those items which were to be considered as the basis for the letting of the contract, and announced such conclusion." The court approved this manner of determining the lowest responsible bidder. If alterna-

tive bids may be disregarded in awarding a contract to the lowest responsible bidder, we fail to see any reason why alternatives on which no bids were made may not likewise be disregarded in awarding a contract. We find no merit in plaintiff's claim that Vicars' bid is nullified for failing to make an alternative bid. If the city council had concluded to award the contract on the basis of the alternative bids, Vicars would have, of course, no standing as a bidder.

The defendants throughout this case have insisted that there is a misjoinder of parties defendant and a misjoinder of causes of action. While we have determined the issues on the merits, the foregoing contentions of the defendants are not without merit. An unsuccessful bidder is not a proper party to bring an injunction suit to prevent an unlawful expenditure of funds by public officials unless he is also a taxpayer, which must be properly alleged and proved. In a suit in equity a representative cause of action cannot properly be joined with an individual cause of action. Niklaus v. Abel Construction Co., 164 Neb. 842, 83 N. W. 2d 904. An unsuccessful bidder has no contractual right to enforce. The plaintiff by his bid proposed to contract for certain work, but his bid was not accepted. It was a proposal only that bound neither party, and as it was never consummated by a contract the city acquired no rights against the plaintiff nor he against the city. The injury, if any, resulting from the rejection of his bid fell upon the public and not upon him personally. We do not say that in a proper case a bidder may not compel the acceptance of his bid where the rejection of it appears to be wholly arbitrary or fraudulent, and against the interests of the public. But ordinarily an unsuccessful bidder for public work has acquired no legal right to protect, either in law or equity, since the letting of contracts to the lowest bidder is regarded as being for the benefit of the public and not for individual bidders. State ex rel. Hron Bros. Co. v. City of Port Wash-

ington, 265 Wis. 507, 62 N. W. 2d 1. See, also, Annotation, 80 A. L. R. 1392; 43 Am. Jur., Public Works and Contracts, § 65, p. 808.

Clearly, plaintiff has no cause of action against the defendants Vicars, either for an injunction or for money damages. Talbot Paving Co. v. City of Detroit, 109 Mich. 657, 67 N. W. 979, 63 Am. S. R. 604. He has sought relief as an unsuccessful bidder on grounds that are available only to a party to the contract or a taxpayer in a representative capacity, neither of which he alleged himself to be. He joined Vicars as a defendant although he had no valid cause of action against him, either in law or equity. While there is a misjoinder of parties defendant and of causes of action, which have not been unobserved by this court, we find, as did the trial court, that the plaintiff, on the evidence adduced on the merits of the case, is not entitled to equitable relief. The judgment of the district court is affirmed.

AFFIRMED.