DONALD E. WILLIAMS et al., individually and on behalf of the class consisting of certain land-owners in the State of Kansas, Plaintiffs-Appellants,

ORVILLE W. WEAR, Harvey County, Kansas,
Intervenor-Appellant,

*vs.*

THE WICHITA WATER COMPANY, a Delaware corporation, and American Water Works Company, Inc., a Delaware corporation, Defendants-Appellees.

*Supreme Court on Appeal, January 30, 1964.*

*Joseph P. Hurley*, Wilmington, *Michael J. Drape*, Kansas City, Mo., and *Kenneth G. Spier*, Newton, Kan., for plaintiffs and intervenor.

*Aaron Finger* (of Richards, Layton & Finger), Wilmington, and *Norman T. Hayes, Jr.*, and *William E. Zeiter* (of Morgan, Lewis & Bockius), Philadelphia, Pa., for defendants-appellees.

TERRY, C. J., and WOLCOTT and CAREY, JJ., sitting.

WOLCOTT, Justice: This is an appeal from the entry of summary judgment for the defendants. The plaintiffs in the action below are owners of rural land in Kansas overlying a formation known as the "Equus Beds", located northwest of the City of Wichita, a source of usable water in the State of Kansas.

The litigation has arisen from the fact that around 1940 the City of Wichita (hereafter "City") determined to augment its water supply by drilling wells and pumping from 35 five-acre tracts acquired by it overlying the Equus Beds. The plaintiffs complain that the pumping of the subterranean water by the City has materially lowered the water table underlying their lands to their damage. The defendants are the Wichita Water Company (hereafter "Company"), a dissolved Delaware corporation, and, at the pertinent times of this litigation, a wholly-owned subsidiary of the American Water Works Company, Inc., a Delaware corporation.

Prior to 1940 the Company was an operating water utility company supplying water to consumers in the City, and drawing all of its water from sources in or near the City.

The Company operated under a 1922 franchise granted by the City under which the City reserved the right to develop a softer and more satisfactory water supply for the City's consumers, and to deliver such water to the plant of the Company which thereupon became obligated to distribute the water thus furnished to the consumers in the City. The water thus delivered by the City to the Company was treated in the City's water plant and then discharged into the Company's distribution facilities with other water obtained by the Company from sources not involved in this proceeding.

At the time the City determined to supply additional water for distribution by the Company, it by ordinance imposed a surcharge upon all water bills rendered by the Company to its consumers, and required the Company to collect such surcharge and pay it over to the City. The distribution of water thus delivered by the City to the Company commenced on September 1, 1940.

In 1956 the City negotiated for the purchase of the physical facilities of the Company and, ultimately, in October of that year, a purchase agreement was executed, approval of which was submitted to the electorate, of the City at the general election of that year. Following the approval obtained at the election the sale was consummated.

Basically, the contention of the plaintiffs in this litigation is that the Company received from the City for the sale of its physical assets a grossly-excessive price, and that in equity the excess of some $10,000,000.00 over the true value of the assets purchased by the City should be impressed with a trust in favor of the class of land-owners represented by the plaintiffs in order to compensate them for the damage caused their lands by the withdrawal by the City of the underlying water.

It is clear from the record that the Company never withdrew any water from the Equus Beds. Such withdrawal was accomplished solely by the City, and the sole connection the Company had with such water was to distribute it to consumers through its facilities as it was required to do by the franchise under which it operated, and the ordinance requiring it to surcharge the customers for such water.

Upon these basic facts the Vice Chancellor granted summary judgment for the defendant primarily because of the lack of any basis for a claim by the plantiffs against these defendants.

It is necessary to state briefly the situation in Kansas growing out of this controversy. Initially, it is to be noted that under the law of Kansas landowners do not have any property ownership in water underlying their land until it is reduced to possession. *Williams v. City of Wichita*, 190 *Kan.* 317, 374 *P.2d* 578. Since therefore these plaintiffs pumped no water at all from the Equus Beds, it

follows under the cited case that they had no property rights in the water, itself.

In 1945 the Legislature of Kansas adopted the Kansas Water Appropriation Act which, in effect, appropriated for public use all of the underlying water in the State of Kansas, and authorized the Chief Engineer of the Division of Water Resources to grant permits for the diversion and use of water. It was under such a grant that the City withdrew water from the Equus Beds. It appears that, at all times pertinent to this litigation, the City did not exceed the annual amount of water it was permitted to withdraw.

The Kansas Water Appropriation Act of 1945 and the issuing of permits by the Chief Engineer for withdrawals pursuant to it were upheld against attack that the Act was unconstitutional in *Williams v. City of Wichita,* supra, appeal from which was dismissed by the Supreme Court of the United States for want of a substantial Federal question. 375 *U.S.* 7, 84 *S.Ct.* 46, 11 *L.Ed.2d* 38. As a part of this decision it was held that the only relief available to the plaintiff was to bring an action at law against the City for damages. Parenthetically, it now appears that such an action has long since been barred by the appropriate Kansas Statute of Limitations.

In view of this state of the Kansas law, it would appear that the City may not be held liable to these plaintiffs by reason of the withdrawal of water from the Equus Beds. It would seem to follow, therefore, that if the City is not liable, the Company which merely distributed the water taken by the City is equally not liable.

■ However, plaintiffs have another theory. They argue that the true value of the Company's assets sold to the City was greatly less than the amount paid for them by the City. It is further advanced that, in some fashion which is not clear to us, this means that the excess paid for the assets was paid by the City for the purpose of enabling the Company to compensate landowners who had been damaged by the withdrawal of water from beneath their lands.

As we say, this theory is not clear to us since there is nothing in the record to so much as hint that any intention existed on the part

of the City to establish a trust fund for the benefit of landowners adjacent to the Equus Beds. Furthermore, it is apparent that through the long course of the controversy the City has consistently taken the position that it had no liability whatsoever to such landowners. It also appears that the City has been uniformly successful in defending that position before the Kansas courts.

We think, therefore, if for no other reason than that there is nothing in the record to indicate it, that there was no intention on the part of the City to pay the Company a large sum of money for the purpose of compensating injured landowners.

■ Furthermore, there is little if anything in the record to show that the price paid the Company was in fact excessive. The argument is based purely on a reference to the balance sheets of the Company. It is based primarily upon a comparison of the purchase price actually paid and the cost less depreciation of the Company's assets. The difference in these figures could easily be explained by inflation and a variety of other factors which are taken into account in valuating the assets of public utilities. This, however, has not been explored in the Court of Chancery because the Vice Chancellor refused to permit discovery to that purpose until the plaintiffs had first established some right to be compensated by the defendants. Since it is clear that there is no showing of a right to compensation from these defendants, his refusal to permit discovery and a lengthy trial on the issue of the fair price to be received by the Company for its facilities was entirely proper.

■ Furthermore, if the price paid the Company was in fact excessive, only the taxpayers of the City who paid the price will be heard to complain of that fact. These plaintiffs are not taxpayers of the City and, consequently, have no standing to contest the contract of purchase entered into by the City and approved by its electorate.

For the foregoing reasons, the judgment below is affirmed.