125 N.J. Super. 67 (1973)
308 A.2d 380
M.A. STEPHEN CONSTRUCTION CO., INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, CROSS-RESPONDENT, AND SARK KAVOOKJIAN, PLAINTIFF,
v.
BOROUGH OF RUMSON, A MUNICIPAL CORPORATION OF THE COUNTY OF MONMOUTH, STATE OF NEW JERSEY, DEFENDANT-RESPONDENT, CROSS-APPELLANT. CARDELL, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
THE TOWNSHIP OF MADISON, A MUNICIPAL CORPORATION IN THE COUNTY OF MIDDLESEX, STATE OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 23, 1973.
Decided July 30, 1973.
*69 Before Judges LORA, ALLCORN and HANDLER.
Mr. Stewart M. Hutt argued the cause for appellant M.A. Stephen Construction Co., Inc. (Messrs. Hutt and Berkow, attorneys; Mr. Jay M. Hollander, on the brief).
Mr. Richard F. Plechner argued the cause for appellant Township of Madison (Mr. Robert G. Hampson, on the brief).
Mr. William R. Blair argued the cause for respondent Borough of Rumson (Messrs. Parsons, Canzona, Blair and Warren, attorneys).
Mr. Jay M. Hollander argued the cause for the respondent Cardell, Inc. (Messrs. Hutt and Berkow, attorneys).
PER CURIAM.
Both of these appeals turn on the issue of whether the lowest responsible bidder for public work, whose bid was improperly rejected and the contract awarded to another bidder by the municipal governing body, is entitled to recover damages against the municipality. Accordingly, they will be treated in a single opinion.
In Rumson the borough on October 22, 1970 received bids for the construction of a portion of its sanitary sewer system *70 in response to advertisement. Seven bids were received, of which that of Stephen was the lowest. On November 25, 1970 the governing body formally rejected all of the bids and directed the borough clerk to readvertise for new bids. The present action was commenced on December 10, 1970, and on January 5, 1971 the trial court entered summary judgment in favor of the municipality. On appeal that judgment was reversed and the cause remanded for plenary trial to determine whether, in rejecting all of the bids, the municipality had acted in good faith. 117 N.J. Super. 431 (App. Div. 1971).
In the interim the borough received the bids which had been solicited by the readvertisement. The plaintiff submitted no bid on this occasion, although invited to do so. The contract was awarded to another contractor and, Stephen not having pursued an application for a stay, the work was substantially completed prior to the argument on the first appeal. On the remand the trial court determined that the rejection of all the October 22, 1970 bids was arbitrary and wrongful, but that inasmuch as the work had been completely performed, no "legal remedies are now available" to Stephen  the judge having earlier granted the motion of the borough to strike the issue of damage from the complaint and the pretrial order, on the ground that Stephen was "not entitled to damages as a matter of law." 118 N.J. Super. 523, 524 (Law Div. 1972).
In Madison bids were solicited and received on October 10, 1968 for resurfacing of streets. Although Cardell was the low bidder, because of errors in calculation by Cardell the totals did not so indicate and the township governing body awarded the contract to the next lowest bidder. Thereupon Cardell commenced an action to set aside the award and to compel the township to award the contract to it. Although unsuccessful in the Law Division and the Appellate Division, Cardell ultimately prevailed in that action in the Supreme Court. Cardell, Inc. v. Madison Tp., 105 N.J. *71 Super. 594 (Law Div. 1969), aff'd 105 N.J. Super. 604 (App. Div. 1969), rev'd 54 N.J. 151 (1969).
Following some delay the contract award to the second lowest bidder was vacated and the township awarded the contract to Cardell. A portion of the included work having previously been performed by the second lowest bidder (apparently pursuant to a resolution adopted by the governing body in spite of a stay of the Law Division judgment)[1], Cardell undertook performance of the balance of the work and completed it in September 1970.
The present action was commenced by Cardell against the township in May 1971, seeking damages "for increased costs to plaintiff due to delay in awarding and executing the contract; [and] loss of anticipated profits" for that portion of the work under the contract performed by the second lowest bidder. There is also included a claim for $10,000 "on a certain book account" and "upon an account stated," the nature of which is not stated.
Before trial was had the township moved "for an order of summary judgment dismissing the plaintiff's complaint for consequential damages." The motion was denied. The present appeal was taken from said denial, upon leave granted by this court.
We are thus brought to the single issue in each of these appeals: Does the wrongful rejection of the bid of the lowest responsible bidder by a municipality render the municipality liable in damages to the bidder  whether for loss of profits, increased costs of performance, costs of preparing *72 and submittting the bid, or for other alleged consequential losses?[2]
The contractor-plaintiffs assert that where a public agency is required to advertise for bids for the performance of work or furnishing of materials and supplies, and to award contracts to the lowest responsible bidder, the responsible bidder who submits the lowest proposal in response to an invitation thereby establishes or creates in himself a right to the award of the contract, which right is breached by the wrongful rejection of his bid; and where, through no fault of the low bidder, the only adequate remedy for the wrongful breach of such right is damages, the municipality is liable for such damages. Contractor-plaintiffs misconceive both the nature of the relationship between the bidder and the party or agency soliciting bids, as well as the purpose and effect of the laws governing the letting of contracts by public agencies.
It is a fundamental of contract law that a bid for the performance of work or for the furnishing of materials submitted in response to a solicitation therefor constitutes no more than an offer. Unless and until there is an acceptance of that offer, no contract comes into being. 1 Williston on Contracts (3d ed. 1957), § 31 at 82. Thus, in the area of private business, when bids are submitted by various bidders in response to invitation, the person soliciting the bids has the unrestricted power to accept such one of said bids as he may wish, in his complete and absolute discretion. As between him and the bidders he may accept the highest bid, an intermediate bid, the lowest bid, or none of them; *73 and he may select the bid submitted by the bidder who may be the most or the least responsible, or somewhere in between  all without breaching any right of or any duty or obligation owing to the bidders. In short, the submission of a bid, without more, creates no rights in the bidder. 1 Williston on Contracts, supra.
The same fundamental of the law of contracts applies equally in the public sector. Submission of a bid for public work in response to an invitation likewise constitutes no more than an offer, and it does not and cannot ripen into a contract unless and until there is an acceptance of that offer by the appropriate public authority. Compare Trap Rock Industries, Inc. v. Kohl, 59 N.J. 471, 478 (1971), cert. den. 405 U.S. 1065, 92 S.Ct. 1500, 31 L.Ed.2d 796 (1972). The single circumstance that the public official acts in a fiduciary capacity for the benefit of the members of the public whom he represents and, as such, owes them the common law obligation of exercising his discretion honestly and in good faith, or may by statute be directed to make his award to the lowest responsible bidder or to the responsible bidder whose bid is most advantageous to the public authority, in no way changes the basic rule or the nature or extent of the correlative rights and duties as between a bidder and the solicitor of the bid. For, that obligation is imposed for the public good, not for the benefit of the bidder. Murray v. Bayonne, 73 N.J.L. 313 (Sup. Ct. 1906); Peter's Garage v. Burlington, 121 N.J.L. 523 (Sup. Ct. 1939), aff'd 123 N.J.L. 227 (E. & A. 1939); Hillside Tp. v. Sternin, 25 N.J. 317 (1957); Commercial Clean Corp. v. Sullivan, 47 N.J. 539, 546 (1966).
In sum, and whatever may be the specifics of the duty owing by a public official in a given case to the members of the public to accept the bid proposal which best serves the public interest, that duty by its very nature runs to the members of the public, and to them alone. It does not run *74 to the bidders, and does not create any right or rights in the bidders. As stated in Hillside Tp. v. Sternin, supra:
For many years our statutory law has required contracts for the performance of public work ... to be let upon competitive bidding solicited through public advertisement. * * * The purpose is to secure competition and to guard against favoritism, improvidence, extravagance and corruption. Statutes directed toward these ends are for the benefit of the taxpayers and not the bidders; they should be construed with sole reference to the public good. * * * [25 N.J. at 322]
Accord, Talbot Paving Co. v. City of Detroit, 109 Mich. 657, 67 N.W. 979 (Sup. Ct. 1896); Day v. City of Beatrice, 169 Neb. 858, 101 N.W.2d 481 (Sup. Ct. 1960); Molloy v. City of New Rochelle, 198 N.Y. 402, 92 N.E. 94 (Ct. App. 1910); Somers Construction Co. v. Board of Education, 198 F. Supp. 732 (D.N.J. 1956); 10 McQuillin, Municipal Corporations (3d ed. 1966), § 29.86; 64 Am. Jur.2d, Public Works and Contracts, §§ 82, 86.
It is true that, as the contractor-plaintiffs point out, a bidder claiming to be entitled to the award of a contract for public work has long been held to have sufficient standing to challenge the rejection of his bid or the letting of the contract to another bidder, and to compel the award of the contract to him, McGovern v. Trenton, 60 N.J.L. 402 (Sup. Ct. 1897). But such standing was granted simply and solely in order that the public interest might be served by compelling the lax or erring public official to properly perform his public trust. It was not thereby intended to create or establish in the bidder entitled to the award of the contract a right which, if violated, would render the public agency liable in damages to the bidder.
If ever there had been any doubt on this score, it was resolved by our Supreme Court in Trap Rock Industries, Inc. v. Kohl, supra:
It, of course, serves the public interest to permit suits to enforce the policy of these [competitive bidding] statutes. To that end, a *75 taxpayer may sue. So, too, may a bidder who claims to be entitled to the award. And to the same end, the low bidder is entitled to be heard by the public authority before his bid is rejected. * * * The low bidder is sometimes said to have acquired a "status." That he has an interest of some character which will support a claim to be heard cannot be questioned. The point to be stressed is that the interest, whatever its dimensions, is conferred upon him to the end that the public will obtain all that is due it in the procurement process, rather than for his individual aggrandizement. * * * [59 N.J. at 479-480]
That same philosophy was expressed in Commercial Clean Corp. v. Sullivan, 47 N.J. 539 (1966). There, a low bidder brought suit to review the action of the State Director of Purchase in rejecting plaintiff's bid, under a statute which directed that the award should be made to the "responsible bidder whose bid * * * will be most advantageous to the State, price and other factors considered." The court there said:
It should be noted that appellant quite properly makes no claim for damages based upon the alleged improper failure to award it the contract. Submission of the lowest bid in answer to an advertisement for bids by the State for public work cannot be the basis of a claim for damages based upon the failure or refusal to accept such bid. * * *[3] [at 546]
Nor should it be overlooked that, to allow the lowest responsible bidder to recover damages not only would violate and run counter to sound and long established principles of law, but also would invert the very policy and reasons which gave rise to the obligation of the public official to accept the bid proposal which best serves the public interest. Thus, where a public authority improperly rejects the lowest bid *76 and awards the contract to the next lowest bidder, who performs the contract work before the ultimate resolution of the legal propriety of the rejection, to permit the low bidder to recover damages would simply twice penalize the public. A "disobedience of the provisions of the statute will make the [public authority] pay the difference between the lowest bid and the bid for which the contract is made, and also the profit that the lowest responsible bidder would have made if the statute had not been violated." Molloy v. City of New Rochelle, 198 N.Y. 402, 407, 92 N.E. 94, 96 (Ct. App. 1910).
Lastly, the contractor-plaintiffs suggest that just as "our Supreme Court abolished the obsolete, unjust and archaic idea of a state's sovereign immunity from suit upon an express contract," so should there be abolished "any concept that a wronged bidder should not receive monetary damages." Quite aside from the obvious fact that, in law, it is the public which is "wronged" and not the bidder, the two propositions are not equatable. What the contractor-plaintiffs overlook is that the narrowing or elimination of the doctrine of sovereign immunity both in contract and in tort simply imposes upon the sovereign and its agencies the same or similar responsibilities and liabilities as those to which private persons always have been subject  a grant of parity, so to speak. To create in favor of the low bidder for public work, whose bid was improperly rejected, a cause of action for damages against the State or its agencies, would be to prefer the bidder for public work over the bidder for private work, the latter having no such right of action  creating inequality, where parity now exists.
It is our conclusion, therefore, that neither of the contractor-plaintiffs is entitled to the recovery of any damages against the respective municipalities by reason of the rejection of their bids, even assuming such rejections to have been in violation of N.J.S.A. 40:50-1. This disposition makes it unnecessary to pass upon the issue of the propriety *77 of the rejection by the Borough of Rumson of all bids originally submitted, raised by the cross-appeal of the borough.
Accordingly, the judgment of the Law Division, Monmouth County, in the case of M.A. Stephen Construction Co., Inc. v. Rumson, is affirmed; and the judgment of the Law Division, Middlesex County, in the case of Cardell, Inc. v. Madison Tp. is reversed, and the cause is remanded with directions to enter judgment in favor of the defendant township on counts 1, 2 and 3 of the complaint, as well as on counts 4 and 5 if the claims for damage therein asserted arise out of the rejection of the bid of Cardell, Inc.
NOTES
[1] The Law Division opinion is dated March 13, 1969. A resolution authorizing execution of the contract with the second lowest bidder was adopted March 19, 1969. The order of the Appellate Division staying "performance and enforcement" of the Law Division judgment was dated April 3, 1969. The township governing body on April 7, 1969 adopted a resolution instructing "the appropriate municipal officials to proceed with the first phase of said road resurfacing program."
[2] It should be noted that the controlling statute in the present causes (N.J.S.A. 40:50-1) has been repealed and supplanted by an entirely new enactment, the Local Public Contracts Law (N.J.S.A. 40A:11-1 et seq.), effective July 1, 1971. Except for the section dealing with awards of contracts for construction, alteration or repairs of public buildings (N.J.S.A. 40A:11-16), the new law seemingly sets forth no standards by which the affected public agencies are to be guided in making contract awards.
[3] We are not unaware of the case of Cardell, Inc. v. Woodbridge Tp., 115 N.J. Super. 442 (App. Div. 1971), certif. den. 60 N.J. 236 (1972). As observed by the trial judge below in his opinion in M.A. Stephen Construction Co. v. Rumson, 118 N.J. Super. 523, 527 (Law Div. 1972), no issue as to the liability of the municipality for damages was there raised or passed upon.