REXROAD, INC., APPELLANT, V. SANITARY AND IMPROVEMENT
DISTRICT NO. 66 OF SARPY COUNTY, NEBRASKA, APPELLEE.
386 N.W.2d 433

Filed May 2, 1986.    No. 85-075.

Dean J. Jungers of Hascall, Jungers & Garvey, for appellant.

Mark A. Klinker, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

SHANAHAN, J.

Rexroad, Inc., appeals the judgment of the district court for Sarpy County denying relief to Rexroad and dismissing its petition which sought nullification of action taken by the board of trustees of Sanitary and Improvement District No. 66 of Sarpy County, Nebraska (S.I.D.), and an award of damages. We affirm.

Rexroad is engaged in garbage collection and collected from some S.I.D. residents for a fee of $5.50 per month for each resident served. Rexroad did not have a written agreement with its customers within S.I.D. Rather, as was the standard in the industry, oral service contracts for garbage collection were terminable at will.

S.I.D. existed and operated as a political subdivision pursuant to the sanitary and improvement districts act, Neb. Rev. Stat. §§ 31-727 et seq. (Reissue 1984). In 1982 S.I.D. assessed its residents to defray expenses for a garbage collection contract to be obtained by the district. On April 28, 1983, S.I.D. mailed its bid forms and specifications to prospective collectors, including Rexroad, and then, in a local newspaper of general circulation, published its specifications and solicitation for sealed bids regarding a contract for garbage collection from July 1, 1983, to June 30, 1984. S.I.D.'s board of trustees had not passed a resolution declaring the "advisability and necessity" for a garbage collection contract. See § 31-744. On May 24 S.I.D.'s board of trustees met in public session, opened bids for the collection contract, and, on the basis of such bids, awarded the collection contract to All Way Sanitation, the low bidder. A written agreement between S.I.D. and All Way was signed on June 30, requiring a collection fee of $4.45 per month for each resident served within the district. S.I.D. notified all its residents about All Way's collection service to be commenced on July 1 pursuant to the contract with the district. As a result of the All Way-S.I.D. contract, 23 S.I.D. residents terminated their service from Rexroad. Rexroad had no office as a place of business within S.I.D. and was not a taxpayer of S.I.D.

Rexroad filed suit against S.I.D. and alleged its loss of S.I.D. customers and the failure of S.I.D.'s trustees to pass a resolution of advisability and necessity concerning the contract sought for

620

garbage collection within the district. Rexroad claimed the action taken by the S.I.D.'s board of trustees was "ultra vires and outside of the authority" conferred by Nebraska law. Rexroad sought nullification of the garbage collection contract and requested damages attributable to loss of Rexroad's former customers within S.I.D. In its answer S.I.D. countered that Rexroad lacked standing to contest action taken by S.I.D.'s board of trustees regarding the contract in question, that is, Rexroad was "not a taxpayer or property owner" within S.I.D.

At conclusion of the trial the district court found that Rexroad was "not a taxpayer or property owner within [S.I.D.], and therefore [Rexroad] lacks standing to challenge [S.I.D.'s] actions." The district court dismissed Rexroad's petition with prejudice.

Rexroad's assignments of error are based on the premise that S.I.D.'s board of trustees acted outside authority existing under Nebraska law governing sanitary and improvement districts.

Purposes and powers of a sanitary and improvement district are found in § 31-727(1), namely,

> installing electric service lines and conduits, a sewer system, a water system, a civil defense warning system, a system of sidewalks, public roads, streets, and highways, public waterways, docks or wharfs, and related appurtenances, to contract for water for fire protection and for resale to residents of the district, to contract for police protection and security services, and to contract for gas and for electricity for street lighting for the public streets and highways within such proposed district, to construct and to contract for the construction of dikes and levees for flood protection for the district, and to acquire, improve, and operate public parks, playgrounds, and recreational facilities.

As authorized by statute, a majority of owners having an interest in real property within the limits of a proposed sanitary and improvement district may form such district by signing and properly filing "articles of association" with an appropriate petition praying that the district, so formed, be declared a sanitary and improvement district under Nebraska law. See § 31-727(1) and (4). As a consequence of the articles of

association for a sanitary and improvement district, the owners of real estate within the district, so formed, are obligated to pay taxes on their property within the district and pay special assessments on real estate within that district. See § 31-727(2). Owners of real estate within a proposed district who have not signed the articles of association may object to organization of a sanitary and improvement district. § 31-729. Initial trustees of a sanitary and improvement district must own real estate within the proposed district. §§ 31-727(3), 31-730. After a sanitary and improvement district becomes a "body corporate and politic," § 31-732, trustees for such district must be owners of real estate within the district and must have been elected by resident owners or owners of real estate, voters eligible by virtue of property ownership or lease. See § 31-735(1) and (2). No corporation is deemed a resident owner for purposes of voting for trustees of a sanitary and improvement district. See § 31-735(3). The common denominator of the preceding statutes for a voice in the conduct of a sanitary and improvement district's matters is a relationship to property subject to tax liability within a sanitary and improvement district.

A sanitary and improvement district is a legislative creature, a political subdivision of the State of Nebraska. *S.I.D. No. 95 v. City of Omaha*, 221 Neb. 272, 376 N.W.2d 767 (1985).

Sanitary and improvement districts have been termed "quasi-municipal corporations" by some commentators and courts. See, 1 E. McQuillin, The Law of Municipal Corporations §§ 2.27-2.29 (3d ed. 1971); C. Rhyne, The Law of Local Government Operations (1980); *Hampton Rds. San. Dist. Comm. v. Smith*, 193 Va. 371, 68 S.E.2d 497 (1952). McQuillin defines quasi-municipal corporations as "Certain public corporations, created by the legislature to exercise a special governmental function . . . ." 1 E. McQuillin, *supra* at § 2.27 at 166. In *S.I.D. No. 95 v. City of Omaha, supra*, we recognized analogous characteristics and relationship between a municipal corporation and a sanitary and improvement district as political subdivisions, to the extent that many principles applicable to a municipal corporation may also be applicable to a sanitary and improvement district.

Before one is entitled to invoke jurisdiction of a court, one

must have standing—some real interest in a cause of action, a right (legal or equitable), title, or interest in the subject matter in controversy. To establish such standing, a litigant must demonstrate a danger of injury to the litigant, resulting from an action to be contested. Generally, sufficient standing as a party in litigation may not be based merely on a general interest common to all members of the public. *Nebraska Sch. Dist. No. 148 v. Lincoln Airport Auth.*, 220 Neb. 504, 371 N.W.2d 258 (1985). An illustration of the preceding principle governing standing is found in *Niklaus v. Miller*, 159 Neb. 301, 303, 66 N.W.2d 824, 826 (1954): " '[A] resident taxpayer, as such, and without proof of peculiar interest or injury to himself, may enjoin the illegal expenditure of money by a public board or officer.' " In *Day v. City of Beatrice*, 169 Neb. 858, 101 N.W.2d 481 (1960), we held an unsuccessful bidder is not a proper party to bring an injunction suit to prevent unlawful expenditures of funds "unless he is also a taxpayer, which must be properly alleged and proved." *Id.* at 866, 101 N.W.2d at 488.

Requirement of taxpayer status as a basis for standing has been similarly applied in other jurisdictions. In *Alarm Applications Co. v. Simsbury Volunteer Fire Co.*, 179 Conn. 541, 548, 427 A.2d 822, 826-27 (1980), the Connecticut Supreme Court stated, "Absent the existence of [a] special legal relationship . . . this court has not recognized the capacity of an individual or a private corporation that has not alleged taxpayers' status to maintain an action challenging the propriety of the conduct of a municipal corporation." In *Williams, et al. vs. Wichita Water Co., et al.*, 41 Del. Ch. 429, 197 A.2d 731 (1964), nontaxpayer owners of rural land overlying a municipal water supply sued a water company, alleging the company charged a city an excessive price in a sale of the company's physical assets to the city. The Delaware Supreme Court held:

> [I]f the price paid . . . was in fact excessive, only the taxpayers of the City who paid the price will be heard to complain of that fact. These plaintiffs are not taxpayers of the City and, consequently, have no standing to contest the contract of purchase entered into by the City and approved by its electorate.

*Id*. at 433, 197 A.2d at 733-34.

If taxpayer status is indispensable for a litigant to contest a municipal expenditure incurred by contract, see *Niklaus v. Miller, supra*, and, generally, if principles applicable to a municipal corporation may be applied to a sanitary and improvement district, see *S.I.D. No. 95 v. City of Omaha, supra*, we believe the logical consequence is a principle that only a taxpayer of a sanitary and improvement district organized pursuant to the sanitary and improvement districts act, §§ 31-727 et seq., has standing to contest validity · of a contractual obligation for expenditure of such district's funds. Cf. *Booth v. General Dynamics Corporation*, 264 F. Supp. 465, 467 n.1 (N.D. Ill. 1967) ("Only those . . . who reside within the corporate limits of the Sanitary District have standing to challenge the tax since only those taxpayers have tax liability to support district operations"). Cf., also, *Day v. City of Beatrice, supra* at 866, 101 N.W.2d at 488 ("The injury . . . resulting from the rejection of [a contractor's] bid fell upon the public and not upon [the contractor]").

Because Rexroad was not a taxpayer of S.I.D., Rexroad lacked standing to contest the validity of the contract in question. The district court was correct in its dismissal of Rexroad's action.

AFFIRMED.

BOSLAUGH, J., concurs in the result.