594 A.2d 1343

DELTA CHEMICAL CORPORATION, A CORPORATION OF THE STATE OF MARYLAND, PLAINTIFF-RESPONDENT, v. OCEAN COUNTY UTILITIES AUTHORITY, A PUBLIC ENTITY; ALLIED COLLOIDS, INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued January 9, 1991—Decided August 12, 1991.

Before Judges KING, LONG and STERN.

*Richard H. Woods* argued the cause for appellant (*Hiering, Dupignac & Barnes, P.C.,* attorneys; *Richard H. Woods* on the brief).

*Richard A. Grossman* argued the cause for respondent (*Grossman & Kruttschnitt,* attorneys; *Thomas J. Heavey* on the brief).

The opinion of the court was delivered by

KING, P.J.A.D.

This is a local public bidding case in which the Ocean County Utilities Authority (OCUA) appeals from a money judgment in the amount of $10,427 entered in favor of a disappointed high bidder, Delta Chemical Corporation (Delta). The judgment was stayed pending appeal. We conclude that the judgment must be reversed. There is also a cross-appeal by Delta on which we affirm.

Many of the pertinent facts are contained in the Law Division judge's published opinion, 231 *N.J.Super.* 180, 554 *A.*2d 1381 (Law Div.1988), and we will not repeat all of them. The action was brought by an unsuccessful bidder, Delta, which claimed an entitlement to a contract to supply polymer, a chemical used for waste and sewage disposal, to OCUA pursuant to an advertisement to bid on July 15, 1987. Delta relied on the "Buy–American" statute in the Local Public Contracts Law, *N.J.S.A.* 40A:11–18,[1] and the Instructions to Bidders inviting

---

[1]In 1971 the bidding laws were compiled in a revision known as the Local Public Contracts Law. *N.J.S.A.* 40:15–1, *L.*1932, *c.* 174, the original local "Buy–American" statute, was retained in substantially the same form. It was designated as *N.J.S.A.* 40A:11–18. In its present form, the statute has been broadened somewhat by an amendment contained in Chapter 107 of the Laws of 1982. The statute now reads:

**American goods and products to be used where possible**
Each local unit shall provide, in the specifications for all contracts for county or municipal work or for work for which it will pay any part of the cost, or work which by contract or ordinance it will ultimately own and

compliance with it.[2]  Delta claimed that it was the only one of seven bidders in compliance with the "Buy–American" provisions of the statute and the Instructions.  Delta sought equitable relief enjoining the award of the contract to Allied Colloids, Inc. (Allied), the low bidder, and an award of the contract to it as the "lowest responsible bidder."  Delta also sought damages.

This is the critical chronology of events.  The bids were received on July 15, 1987.  The contract was awarded by OCUA to Allied on July 23, 1987.  The complaint attacking the award was filed against OCUA and Allied on August 21, 1987.  The judge heard arguments on the order to show cause on November 19, 1987 after affidavits and briefs had been filed.  On December 2, 1987 the judge denied a temporary restraint of the award to and performance of the contract by Allied.  The judge then invited briefing on the constitutionality of the statute, *N.J.S.A.* 40A:11–18.

After hearing testimony on "the historical pattern of implementation of *N.J.S.A.* 40A:11–18," *see* 231 *N.J.Super.* at 191–196, 554 *A.*2d 1381, the judge found the "Buy–American" statute susceptible of a constitutional construction if applied with a rule of "reason" engrafted upon it.  *Id.* at 196, 554 *A.*2d 1381.  This is the essence of his ruling:

> The court concludes that, in some circumstances, the OCUA has discretion to buy a foreign product even if an American product is available.  However, given the evident statutory intent to provide at least a preference for American products, the OCUA must demonstrate that it has acted reasonably.  *N.J.S.A.* 52:33–2 and 3, which allow discretion in state purchases, require the State to justify the purchase of foreign materials.  The OCUA has the same obligation.

---

maintain, that only manufactured and farm products of the United States wherever available, be used in such work.

[2]The Instructions to Bidders contained this language:

**Preference for Domestic Products**

Only manufactured products of the United States, wherever available, shall be used in connection with this contract, pursuant to 40A:11–18 of the Revised Statutes of the State of New Jersey.

> Admittedly, this result brings uncertainty to the bidding process. Henceforth, the bidding agencies could be subjected to litigation testing the reasonableness of their exercise of discretion. The suppliers, whether American or foreign, can challenge the soundness of the bidding agency's judgment. Certainty is one of the key ingredients of an effective and credible bidding law. *Pucillo & Sons, Inc. v. Mayor and Council of New Milford*, 73 *N.J.* 349, 355 [375 *A.*2d 602] (1977). Therefore, it appears that legislative action would be desirable to address this issue and clarify the responsibility of local governmental bodies involved in public bidding. The policy determination belongs to the Legislature. It can choose to give an absolute preference to American products. However, if discretion is to be allowed, definitive guidelines are needed to put bidders on an equal footing and protect governmental bodies against unnecessary litigation. [*Id.* 231 *N.J.Super.* at 196–197, 554 *A.*2d 1381.]

The judge then conducted a "plenary hearing to determine whether OCUA acted reasonably in awarding all three contracts to Allied." *Id.* at 197, 554 *A.*2d 1381.

The judge held this hearing on March 27, 1989 and on May 19, 1989 he rendered a letter opinion which is unpublished. The judge concluded that under *N.J.S.A.* 40A:11–18, Delta's American-made product was eligible for preference over Allied's foreign-made product. He then made these findings on the differentials in the bids of the parties on the three facilities:

| Facility | Cost per Dry Ton | Total Cost | Percentage Difference |
|----------|------------------|------------|-----------------------|
| Northern |  |  |  |
| Delta | $23.05 | $ 80,675 |  |
| Allied | 20.43 | 71,505 | 12.8% |
| [Difference] | $ 2.62 | $  9,170 |  |
| Central |  |  |  |
| Delta | $38.91 | $116,730 |  |
| Allied | 22.95 | 68,850 | 69.5% |
| [Difference] | $15.96 | $ 47,880 |  |
| Southern |  |  |  |
| Delta | $40.40 | $ 40,400 |  |
| Allied | 16.37 | 16,370 | 146.8% |
| [Difference] | $24.03 | $ 24,030 |  |

The judge concluded that "given the absence of standards, the court must determine whether the authority has unreasonably withheld the preference from Allied."

The judge decided that the "rule of reason" required that Delta should have received the award for the Northern facility only, for which the differential was but 12.8% ($9,170). He rejected Delta's contention as to the Central and Southern facilities where the differentials were substantial, 69.5% ($47,-880) and 146.8% ($24,030). He said that "fairness dictates that Delta be deemed the successful bidder for the Northern Facility since its bid was only 12.8% higher.... On the other hand, it would be unreasonable to deem it the successful bidder for the other two contracts given the extreme differential in the cost."

The judge dismissed OCUA's contention that violation of the bidding laws cannot give rise to a cause of action for damages in favor of a wrongfully rejected bidder. Confronted with the sharply conflicting legislative goals of preference for American products and preservation of the public fisc he ruled that "private parties must be able to bring suit to enforce the "Buy American" provisions and, if successful be reimbursed for the wrongful failure to comply with these regulations." The parties then stipulated damages at $10,427 to Delta for loss of the award at the Northern Facility. The money judgment was entered for Delta because "the contract which has been the subject of this lawsuit has already expired by its own terms" and equitable relief was unavailable. In conclusion, the judge stressed that the result "reached here is limited to the unique circumstances before [the court]. [We] reiterate the Authority's right to adopt appropriate guidelines (which hopefully will someday be contained within [a] state statute)."

On this appeal OCUA contends that the judge erred in (1) declaring *N.J.S.A.* 40A:11–18 constitutional and in (2) ruling unreasonable the award of the Northern Facility contract to Allied. Implicit in OCUA's appeal, of course, is a challenge to the judgment of $10,427 in favor of Delta. On the cross-appeal,

Delta asserts error claiming it should have prevailed on all three aspects of the contract, not just on the Northern Facility. No judgment was entered against Allied, the successful bidder. Delta does not appeal denial of relief as to Allied.

We conclude that our function here is to review the validity of the judgment which gave Delta a recovery of $10,427 for loss of the contract on the Northern Facility but denied damages for loss of the contract for the Central and Southern Facilities. We conclude that the judgment for $10,427 must be reversed and that the judgment denying recovery for the other two bids must be affirmed. An unsuccessful bidder may attack the award of the contract but may not recover money damages, even if the challenge succeeds. *M.A. Stephen Constr. Co. v. Borough of Rumson*, 125 *N.J.Super.* 67, 75, 308 *A.*2d 380 (App.Div.1973). "To permit the low bidder to recover damages would simply twice penalize the public." *Id.* at 76, 308 *A.*2d 380. See also *Commercial Cleaning Corp. v. Sullivan*, 47 *N.J.* 539, 546, 222 *A.*2d 4 (1966). "Submission of the lowest bid in answer to an advertisement for bids by the State for public work cannot be the basis of a claim for damages based upon the failure or refusal to accept such bid." *Id.* This rule seems to be universal in application. *See* 10 *McQuillin, Municipal Corporations* § 29.86 at 548 (3rd ed. 1990); *Morie Energy Management, Inc. v. Badame*, 241 *N.J.Super.* 572, 577, 575 *A.*2d 885 (App.Div.1990); *Casey's Auto Parts, Inc. v. City of Camden*, 218 *N.J.Super.* 255, 259, 527 *A.*2d 505 (Law Div.1987); *J.P. Mascaro & Sons, Inc. v. Township of Bristol*, 497 *F.Supp.* 625, 627 n. 4 (E.D.Pa.1980).

We do not find it necessary to pass on the constitutionality of *N.J.S.A.* 40A:11–18 since we reverse the judgment in favor of the plaintiff and no equitable relief is feasible at this point. Appeals are taken from judgments, not from opinions. *Malhame v. Borough of Demarest*, 174 *N.J.Super.* 28, 31, 415 *A.*2d 358 (App.Div.1980). See *Heffner v. Jacobson*, 100 *N.J.*

550, 553, 498 *A.*2d 766 (1985).[3]  We do think that *K.S.B. Technical Sales Corp. v. North Jersey District Water Supply Commission,* 75 *N.J.* 272, 381 *A.*2d 774 (1977), *appeal dismissed,* 435 *U.S.* 982, 98 *S.Ct.* 1635, 56 *L.Ed.*2d 76 (1978), upholding the constitutionality of the "Buy American" statutes applicable to the State, *N.J.S.A.* 52:33–2 and 3, most likely controls on this issue and that *N.J.S.A.* 40A:11–18 probably is constitutional.  See also *Trojan Technologies, Inc. v. Commonwealth of Pennsylvania,* 916 *F.*2d 903, 912 n. 17 (3rd Cir.1990), *cert. den.* —— *U.S.* ——, 111 *S.Ct.* 2814, 115 *L.Ed.*2d 986 (1991), noting that 11 states have some form of "Buy–American" legislation, upholding the "Buy–American" provisions of the Pennsylvania Steel Products Procurement Act, Pa.Stat.Ann. tit. 73, §§ 1881–1887 (Purdon Supp.1991), against preemption, Commerce Clause and foreign affairs powers challenges.

The testimony summarized by the trial judge, 231 *N.J.Super.* at 191–196, 554 *A.*2d 1381, conclusively demonstrates the dilemma confronting purchasing officials in trying to implement these "Buy–American" statutes.  As the trial judge emphasized in both his reported, 231 *N.J.Super.* at 197, 554 *A.*2d 1381, and his unreported opinions, and as we must also stress, some regulatory or legislative guidelines are sorely needed before these "Buy–American" statutes can be effectively administered.  The purchasing officials are torn between the commands of *N.J.S.A.* 40A:11–6.1, contracts "shall be awarded to the lowest responsible bidder," and *N.J.S.A.* 40A:11–18, only "products of the United States" may be used.

The federal counterpart, 41 *U.S.C.A.* § 10a to 10d, solved the dilemma to a large extent by an Executive Order signed by President Eisenhower on December 17, 1954.  The Order states in pertinent part:

---

[3]The Attorney General was notified of the litigation but was disinclined to "enter this matter at the trial level."  The Attorney General has not appeared on the appeal and the parties do not tell us if he was on notice of it.

**Sec. 2.** (a) For the purposes of this order materials shall be considered to be of foreign origin if the cost of the foreign products used in such materials constitutes fifty per centum or more of the cost of all the products used in such materials.

(b) For the purposes of the said act of March 3, 1933 [enacting sections 10a to 10c of this title], and the other laws referred to in the first paragraph of the preamble of this order, the bid or offered price of materials of domestic origin shall be deemed to be unreasonable, or the purchase of such materials shall be deemed to be inconsistent with the public interest, if the bid or offered price thereof exceeds the sum of the bid or offered price of like materials of foreign origin and a differential computed as provided in subsection (c) of this section.

(c) The executive agency concerned shall in each instance determine the amount of the differential referred to in subsection (b) of this section on the basis of one of the following-described formulas, subject to the terms thereof:

(1) The sum determined by computing six per centum of the bid or offered price of materials of foreign origin.

(2) The sum determined by computing ten per centum of the bid or offered price of materials of foreign origin exclusive of applicable duty and all costs incurred after arrival in the United States; provided that when the bid or offered price of materials of foreign origin amounts to less than $25,000, the sum shall be determined by computing ten per centum of such price exclusive only of applicable duty.

[Executive Order No. 10582, Dec. 17, 1954, 19 F.R. 8723, as amended by Ex.Ord. No. 11051, Sept. 27, 1962, 27 F.R. 9683; Ex.Ord. No. 12148, July 20, 1979, 44 F.R. 43239.]

We observe that under these federal guidelines Delta could not have prevailed with a 12.8% differential.

Perhaps the Executive or Legislative branches can adopt similar guidelines for state and local purchasing agencies. Without guidelines administration of the "Buy–American" statutes will no doubt continue to be frustrating and inconsistent, and could invite a torrent of litigation.

Reversed on the appeal; affirmed on the cross-appeal.